PETERSON, Respondent, vs. NORTHERN PACIFIC RAILROAD COMPANY, Appellant.

*September 29 — October 17, 1893.*

*Railroads: Fences: Killing of horses on track: Contributory negligence.*

To the plaintiff's knowledge, four or five rods of the fence between his yard and defendant's track had been broken down for several months, and the opening had been used as an entrance to the yard. His horses were turned loose in the yard by an employee who had been instructed to watch them to see that they did not get upon the track. The yard was about eighty feet wide, with good pasturage extending through the opening in the fence and upon defendant's right of way. While the employee's attention was diverted by other work the horses passed through the opening upon the track, and they were shortly afterwards killed by a passing train. *Held*, that plaintiff was guilty of contributory negligence.

APPEAL from the Circuit Court for *Ashland* County. The case is stated in the opinion.

For the appellant the cause was submitted on the brief of *D. S. Wegg* and *T. H. Gill.*

For the respondent there was a brief by *Rossman & Foster,* and oral argument by *O. H. Foster.*

Orton, J. This action is brought by the plaintiff against the appellant company to recover damages for the killing of his two, or a span of, horses, on the night of June 13, 1892, by a freight train, caused by the negligence of the company in leaving open the fence of its right of way, through which the horses had strayed upon its track. The following facts substantially appear from the evidence:

The plaintiff owned and occupied a large yard, situated a mile or a mile and a half south of the city of Ashland, the west side of which was on the line of the railroad. It was fenced on the three sides with a wire fence, and on the west side by the wire fence along the right of way built by the company. In this yard was a slaughterhouse, barn, and dwelling house. The barn was facing towards the railroad, and about sixty or seventy feet from the fence; and in front of the barn the wire fence along the right of way, for four or five rods, was broken down from the posts, and lay on the ground, and this was its condition when the plaintiff bought the premises, about six months before, and had so continued. Through this opening the plaintiff had driven several times, and his foreman had driven cattle through it, and many other people had used it in going to the slaughterhouse. This opening had existed most of the time for several years. It had been many times repaired by the company, but very soon it was torn down again by some persons unknown. The plaintiff and others had used it in driving to the slaughterhouse, and it was often used as one of the entrances to the yard. The foreman of the yard or head butcher had used the team of horses that were killed that afternoon, and turned it over to an em-

Peterson vs. Northern Pacific R. Co.

ployee of the plaintiff, to be put in the barn, with the caution that if he turned them out to feed on the grass he must *watch* them and see that they did not go upon the right of way; and the plaintiff had told his men that if they were so turned out they must be *watched*, for the same purpose. The said employee, however, about 8 o'clock in the evening, when it was quite dark, turned the horses out in front of the barn and opposite said opening to graze on the high grass which was growing there, and which extended all along through the opening and in the right of way, and he kept watch of them a few minutes, and then for a minute or two his attention was somewhat diverted by fixing the barn door, and when again he looked the horses were gone, and he and the foreman tracked them through the opening and along the right of way to the place where they were killed by the freight train of the company that had just passed along.

These are the plain and undisputed facts of the case. The jury found that the defendant was guilty of negligence contributory to said injury, and that the plaintiff was *not* guilty of negligence contributory to such injury, and that the value of the horses was $450. The defendant has appealed from the judgment thereon, and has assigned as error that the court did not grant a new trial on the ground that the verdict is against the evidence and contrary to law.

We do not hesitate to say that the trial court ought to have granted the motion for a new trial on the ground that the verdict is contrary to the evidence in finding the plaintiff not guilty of contributory negligence. This appears to be one of the clearest cases of contributory negligence on the part of the plaintiff to be found in the books. The plaintiff turned his horses out to grass in the yard in front of his barn, only from seventy to eighty feet wide, opposite an opening four or five rods wide in the fence of the railroad, with unbroken good pasturage all the way through

the opening and in the right of way to tempt them on and on to the very track of the railroad, where they would be likely to be killed by a passing train. The plaintiff had known of this wide break in the railroad fence for at least six months, had driven through it, and saw other people drive through it, to his slaughterhouse, and had evidently used it for his own convenience as an entrance to his yard. He so well knew the danger of his horses going through the opening on the railroad and of being killed there if they were turned out to graze in the yard in front of the barn, that he cautioned all of his employees to *watch them* and see that they did not go out into the right of way. At this time the employee was so cautioned, and did *watch them*, but his attention was diverted to some other work a minute or two, and, sure enough, just as the plaintiff had reason to expect and did expect, the horses were gone into the right of way and out of sight through this wide opening in the fence.

The plaintiff used this fence to fence in his own yard on that side, and he had no other. It was his line fence between his premises and that of the company. Perhaps the law did not require him to keep it repaired, but the law of self-preservation and protection would seem to require it. But, if not that, he certainly assumed the duty of watching his horses and preventing them from going through this gap in the fence which he was making otherwise so useful to himself and others as an open entrance to his yard. He knew the danger and assumed the risk. He ordered his men to watch them, but they did not watch them. They neglected this plain and necessary duty, and their negligence is imputed to him. The plaintiff should have watched them, or been sure that they were watched by some one. No ordinarily prudent and careful man would pasture his horses in such a place. He was certainly guilty of gross negligence in turning his horses out in such a place. The

company had frequently repaired this fence by nailing the wires to the posts, and it was as frequently torn down by some one, until the company became discouraged, probably, and let it alone. There was no one who had any interest or motive to tear this fence down in that place unless he was in some way connected with this slaughterhouse yard. The plaintiff and his men, and those who drove cattle to his slaughterhouse, seem to have been willing to make use of this gap as an entrance to the yard. This is a much stronger and clearer case of the plaintiff's negligence than the following cases in this court, in which we have held that the plaintiff could not recover by reason of his contributory negligence in exposing his animals to a similar risk of being killed on the railroad: *Carey v. C., M. & St. P. R. Co.* 61 Wis. 71; *Martin v. Stewart,* 73 Wis. 553; *Richardson v. C. & N. W. R. Co.* 56 Wis. 347. The negligence of the plaintiff is so self-evident that the authority of other cases is not necessary.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.