PERRAULT, Respondent, vs. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, Appellant.

*March 24—April 17, 1903.*

*Railroads: Killing of cattle on track: Sufficiency of fence: Issues: Construction of statutes: Proximate cause.*

1. In an action to recover for cattle killed on a railway track, based solely on an alleged negligent failure to keep the fence in repair, defendant cannot object that the decision was based on insufficiency of the fence 'as originally built, where at the trial its attorney did not object to a decision on that question but moved for direction of a verdict on the ground, among others, that it conclusively appeared that a sufficient fence had been built.

2. When, in a penal statute, general language is used as to the means to be adopted'to prevent the mischief dealt with, leaving particulars as to performance more or less to the discretion of those whose conduct is the subject of the regulation, a provision that performance in a particular way shall be deemed suf-

ficient for that purpose does not imply that any other method sufficient therefor in fact shall not be deemed likewise sufficient in law.

3. In sec. 1810, Stats. 1898, the declaration that a barbed wire fence constructed in a particular way shall be deemed a good and sufficient fence does not mean that no other barbed wire fence shall be deemed sufficient. A fence constructed according to the statutory specifications is sufficient as a matter of law. The sufficiency of a fence constructed otherwise is a question of fact.

4. Although the railway fence erected at a certain place was insufficient, such failure of the company to perform its statutory duty does not render it absolutely liable for injuries to domestic animals getting upon its right of way at that point, unless there was a causal connection between such failure and the entry of the animals on the right of way.

5. If the entry of animals upon the right of way was not referable to the insufficiency of the fence as erected nor to negligence in the matter of keeping it in repair, but to the acts of trespassers in breaking down the fence, the railway company is not liable under sec. 1810, Stats. 1898, for injuries to such animals.

APPEAL from a judgment of the circuit court for Marinette county: S. D. HASTINGS, JR., Circuit Judge. *Reversed.*

Action to recover for cattle killed on defendant's railway track by one of its engines colliding with them. The claim of plaintiff as set forth in her complaint was that the cattle entered upon defendant's right of way at a point where it negligently permitted its fence to remain broken down and insufficient, and then went upon the track and were killed. There was an issue raised, distinctly, respecting negligence of defendant in permitting its fence to be out of repair, but not as to whether it was at fault in not having constructed a proper fence. The evidence was undisputed that the value of the cattle was $90; that they entered upon defendant's right of way at a point where its fence was down, the same having been practically destroyed by trespassers; that it constructed and endeavored to keep in place at the location in question a four-wire fence, with three posts to the rod; that people had for a long time, without its permission, been ac-

customed to go upon the right of way at the *locus in quo* and for their convenience to break down the fence and leave it insufficient to turn cattle; that as often as defendant found the fence down it repaired the same; that it put in a middle post a few days before the occurrence complained of, as an extra precaution against the fence being made insufficient by trespassers; that it was repaired a day or two prior to such occurrence; that plaintiff, with knowledge of the fact that the fence was habitually kept open by trespassers, allowed her cattle to run at large regardless thereof. The evidence as to the fence being made of four wires came in without objection. There was no evidence as to whether such a fence was or was not reasonably sufficient to restrain cattle from going upon the right of way, and no evidence as to the height of the fence.

At the close of the evidence defendant's counsel moved for the direction of a verdict in its favor upon the ground that it conclusively appeared that a sufficient fence was constructed at the point in question; that it was down on the occasion of the cattle going upon the right of way, without actionable negligence on its part, and that plaintiff was guilty of contributory negligence. The motion was denied and the ruling excepted to.

The court then decided that defendant was guilty of having failed to construct such a fence as the statute provides shall be deemed sufficient, and was therefore liable as a matter of law for the value of plaintiff's cattle regardless of fault on her part. A verdict was directed accordingly. There was a motion to set the same aside as contrary to the evidence, which was denied and the ruling duly excepted to. Judgment being perfected upon such verdict, defendant took this appeal therefrom.

The cause was submitted for the appellant on the briefs of *W. B. Quinlan,* attorney, and *Alfred H. Bright,* of counsel, and for the respondent on that of *Chas. C. Daily.*

MARSHALL, J.   In the complaint respondent's cause of action was grounded solely on negligence of the appellant in respect to keeping its fence in repair.   That inferentially admitted that but for such negligence the cattle would not have gone upon the right of way and the damage been caused "in whole or in part" from want of compliance with the statutory duty as to fences.   The point is made that on such state of the pleadings a recovery should not have been allowed on the ground of failure to construct a proper fence.   However, it appears quite clearly from the record that appellant is in no position to successfully urge that point.   At the close of the evidence the court assumed that insufficiency of the fence, waiving the question of want of repair, would sustain respondent's claim if it was otherwise within the statutory liability of appellant, and the latter's attorney not only did not except to that view, but expressly submitted the question of the sufficiency of the fence upon the undisputed evidence as a question of law.

There being no question upon the pleadings, as indicated, as to the sufficiency of the fence constructed, we must assume that the trial court, in deciding that the fence was insufficient upon the evidence, waiving the question of want of repair, looked merely to the proof that there were only four wires, presuming that otherwise the structure came up to the statutory standard, as there was no proof to the contrary except that it was made of four wires instead of five.   If the learned trial court intended to hold, as appears to be the case, that no barbed wire fence except one constructed according to all the specifications of the statute will do, and that such a fence in place is a condition precedent to exemption from the extraordinary statutory liability, a grievous error was committed.   The statute, as has been held, is in derogation of the common law and must be strictly construed so as not to impair common-law principles further than is clearly manifest therein.   *Cook v. M., St. P. & S. S. M. R. Co.* 98 Wis. 624,

646, 74 N. W. 561, 567. This language was there used, and to the idea there expressed we must adhere:

"The statute is in derogation of the common law. It is a penal statute. The validity of it rests wholly upon the police powers of the government, and it should be construed with reasonable strictness so as not to go beyond its plain letter and spirit."

That doctrine must have escaped the attention of the learned trial court, because, while the language of the statute upon which the right of plaintiff to recover depended is that a barbed wire fence built according to the specifications named therein shall be deemed a good and sufficient fence, it was given the broadest possible meaning by applying thereto the maxim, *expressio unius, exclusio alterius.* That is often a rule of liberal rather than strict construction. It cannot be legitimately applied so as to invalidate every attempt to comply with a penal law, merely because not strictly in line with what the law says shall be deemed sufficient to satisfy the requirements thereof. The presumed legislative intention, in a mere police regulation at least, is to indicate beyond reasonable probability of mistake the mischief dealt with and the means to be adopted to prevent it. Hence, when general language is used as to the latter element, leaving particulars as to performance more or less to the discretion of the individuals whose conduct is the subject of the regulation, so long as the efficiency thereof reasonably guards against the mischief sought to be prevented, a provision that performance in a particular way shall be deemed sufficient for that purpose does not imply that any other method sufficient therefor in fact shall not be deemed likewise sufficient in law. Words should not be read into a penal statute not there by necessary implication for the purpose of broadening the effect thereof in the impairment of common-law rights or the increase of responsibilities over those of the common law. This court has many times said that the meaning of such enactments must be

judicially restricted to their plain letter and spirit. *Stone v. Lannon,* 6 Wis. 497; *Coleman v. Hart,* 37 Wis. 180; *State v. Huck,* 29 Wis. 202; *Crumbly v. Bardon,* 70 Wis. 385, 36 N. W. 19. Chief Justice MARSHALL, in the early case of *United States v. Wiltberger,* 5 Wheat. 76, declared the scope of judicial authority in administering a penal statute, which has been pretty uniformly accepted as correct, in effect thus: The letter of the statute should not be departed from at all except where necessary to effect a manifest legislative intention disclosed by the act, and then only in a plain case. Summing up the law concisely, the learned chief justice said:

"The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department."

"Although penal laws are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the legislature."

"The case must be a strong one indeed, which would justify a court in departing from the plain meaning of words, especially in a penal act."

In the light of the foregoing it seems plain that the legislative declaration in sec. 1810, Stats. 1898, that a barbed wire fence constructed in the particular way mentioned shall be deemed a good and sufficient fence, in connection with its context, does not warrant interpolation into the law of these words, or those of like effect: "And no other barbed wire fence shall be deemed sufficient." The reasonable view of the statute, it seems, is that the legislative purpose was to lay down specifications as to a barbed wire fence which, when followed, would result in a structure sufficient as a matter of law, and if not so followed, yet the fence is constructed according to the mandatory language of the statute, the sufficiency of the structure would be a matter of fact to be determined by the jury. Such mandatory language, and that

part relating to barbed wire fences, read together, omitting the language respecting cattle guards, are as follows:

"Every railroad corporation operating any railroad shall erect and maintain on both sides of any portion of its road (depot grounds excepted) good and sufficient fences of the height of four and a half feet, . . . to prevent cattle and other domestic animals from going on such railroad. . . . Until such fences . . . shall be duly made every railroad corporation owning or operating any such road shall be liable for all damages done to cattle, horses or other domestic animals, or persons thereon, occasioned in any manner, in whole or in part, by the want of such fences. . . . A barbed wire fence consisting of not less than five barbed wires, with at least forty barbs to the rod, firmly fastened to posts, well set, not more than sixteen and one half feet apart, with one good stay between, the top wire not less than forty-eight inches high and the bottom wire not more than eight inches from the ground, and the spaces between the bottom and the second and second and third wires from the ground not more than eight inches each shall be deemed a good and sufficient fence."

Thus it will be seen that the mandatory call for a fence of some suitable material four and one half feet high is modified as to barbed wire fences, and such fences, when constructed otherwise, according to specifications named, are declared to be good as a matter of law to accomplish the purposes of the statute. That a barbed wire fence may be constructed much more efficient for such purposes than one made according to the statutory specifications must be obvious to ordinary understanding. It would be a most unreasonable construction of the statute to hold that the better fence must be held insufficient as a matter of law because the inferior fence is declared sufficient as a matter of law. We find nothing in the record in this case showing how high the fence in controversy was. The complaint inferentially admits that it was high enough to comply with the statute. However, if that were not the case, it would not change the result here in any event, for we

are of the opinion that a barbed wire fence less than four feet high, if sufficient in fact to prevent domestic animals from going upon a railway track, will satisfy the calls of the statute. It would be unreasonable to hold that all the specifications as to a barbed wire fence are essential as a matter of law to its sufficiency. Otherwise, however well a fence might be constructed and however efficient to turn cattle and other domestic animals, a departure from such specifications would necessarily be held sufficient to condemn the fence. In this case we think that, upon the pleadings and the evidence, it was a jury question as to whether the fence, if in a proper state of repair, was reasonably sufficient to prevent cattle and other domestic animals from going upon appellant's right of way.

Error is assigned on the ruling of the court that under the statute, if the fence as originally constructed was not sufficient to satisfy the calls of the law, appellant was absolutely liable for the value of the cattle, since the evidence showed that they entered upon the former's premises at a point where the right of way was required to be fenced. The ruling was wrong, tested by the very letter of the statute and by the decisions of this court thereunder as well. The penalty of the statute is not that the delinquent railway company shall be absolutely liable for the loss of domestic animals killed upon its track, that reach the same by way of a point where a sufficient fence should be in place to prevent such an entry, but that such liability shall exist if the damages are caused, in whole or in part, from failure to construct a fence as the statute requires. Such failure in any given case must at least contribute to produce the injury complained of, it will be seen, in order to render active the extraordinary liability under the statute. It must be alleged as a fact and established by the evidence. If such fact be left involved in reasonable doubt by the evidence, that doubt must be solved by the jury· in favor of the plaintiff, else the rule of absolute liability will

not apply. In *Cook v. M., St. P. & S. S. M. R. Co.* 98 Wis. 624, 74 N. W. 561, it was held that, notwithstanding it conclusively appeared that the horses entered upon the right of way where a fence should have been constructed but had never been in place, and were killed by the defendant's train, there could be no recovery of damages by the owner of the horses because the evidence conclusively showed that the failure to fence had no causal connection with the killing of the horses; that 'for want of such causal connection the case was not within the statute. The evidence was undisputed that if a fence had been constructed and maintained up to within a few hours of the entry of the horses upon the right of way, none would have existed at the time of the entry because, under the circumstances, it would have been inevitably destroyed so recently before such entry that the defendant could not reasonably have been charged with negligence in failing to restore it in time to prevent the occurrence complained of. In such circumstances it seemed plain and was held that the killing of the horses was not caused, in whole or in part, by the failure to fence.

The language of the statute manifestly makes failure by any railway company to perform the statutory duty as to constructing right of way fences sufficient to create an absolute liability for damages to the owner of domestic animals killed upon its tracks, if the entry of such animals thereon be by way of a point where a fence is required, only when such failure has some causal connection with the occurrence of the animals getting within the region of danger. In view of that, if it be held here that appellant's fence was not sufficient to satisfy the calls of the statute, and it yet be held under the circumstances of the case that such insufficiency had no proximate connection whatever with the cattle reaching the place where they were killed, because, regardless of the character of the fence in fact, or what it ought to have been, it would have been rendered useless by trespassers, so that such in-

tervening cause would have furnished the opportunity for the cattle to go upon the track, then plaintiff was not entitled to recover, because such going upon the track in that state of the case would necessarily be referable, not to failure to fence, nor to failure to exercise ordinary diligence to keep the fence in a proper state of repair, but to the destruction of the fence by third persons, just as in *Cook v. M., St. P. & S. S. M. R. Co. supra,* it was held referable to the fire, which, shortly before the horses entered upon the track, swept over the country, destroying everything of a combustible nature.    There is strong evidence here that the acts of trespassers in destroying the efficiency of appellant's fence so broke the causal connection between the failure of duty on its part, if there was such failure, either in respect to the original construction of the fence or in exercising ordinary diligence to keep the same in repair, that the vital chain between the damage complained of and the incitive cause thereof wholly terminated before reaching such failure.    There was an important question of fact on that branch of the case for solution by the jury.

In view of what has been said it is manifest that there was a third and fourth question which the jury should have been required to solve.    The evidence, viewing the same as favorably as we reasonably can for the plaintiff (though it would be safe for the purposes of this case to view the same as favorably as we can for appellant), is susceptible of conflicting reasonable inferences as to whether appellant exercised reasonable diligence to keep the fence in repair, and whether respondent was guilty, either directly or by imputation, of contributory negligence.    There was much evidence tending to show that appellant made diligent efforts to keep the fence efficiently in place, and was prevented by the lawless conduct of persons for whose acts it was in no wise responsible; and evidence that plaintiff, or those for whose conduct she was responsible, allowed the cattle to run at large with knowledge that the fence was out of repair or might probably be in such

condition, and that the cattle could and might probably go upon the railway track. If it be a fact that the fence, as constructed, was sufficient to satisfy the statutory duty, then the rule of absolute liability, obviously, is out of the way, and appellant is liable only for damages caused proximately by failure to exercise ordinary care in keeping the fence in repair; and then only in case such failure was the proximate cause of the damage complained of, without any contributory fault upon the part of respondent, either directly or by imputation. Sec. 1810, Stats. 1898, so provides. It has been repeatedly held by this and other courts, under similar statutes, that if the owner of cattle turns them loose where he knows or ought reasonably to know they are likely to go upon a railway track because of the right of way fence being out of repair, he is guilty of contributory negligence. *McCann v. C., St. P., M. & O. R. Co.* 96 Wis. 664, 71 N. W. 1054; *Curry v. C. & N. W. R. Co.* 43 Wis. 665; *Richardson v. C. & N. W. R. Co.* 56 Wis. 347, 14 N. W. 176; *Peterson v. N. P. R. Co.* 86 Wis. 206, 56 N. W. 639.

The result is that there was evidence produced from which the jury might reasonably have found either of these propositions in favor of defendant: (1) The fence as originally constructed was sufficient to satisfy the calls of the statute. (2) Defendant was reasonably diligent in keeping the fence in repair. (3) The entry of the cattle upon the right of way had no causal connection with either the failure to fence or failure to exercise ordinary diligence to keep the same in repair. (4) Respondent was guilty of contributory negligence. A decision in appellant's favor upon either the first or third proposition would have been fatal to respondent's case. A decision in respondent's favor upon both the first and second propositions, in connection with a decision in appellant's favor upon either the third or fourth proposition, would have been fatal to respondent's claim. So the conclusion must follow that the learned trial court committed several reversible

errors before the ruling was made refusing to set the verdict aside and grant a new trial, and that further reversible error was committed in making such ruling.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for a new trial.