## COOK *v.* MARSHALL COUNTY, IOWA.

### ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

No. 98.  Argued December 9, 12, 1904.—Decided January 16, 1905.

The term original package is not defined by statute and while it may be impossible to judicially determine its size or shape, under the principle upon which its exemption while an article of interstate commerce is founded, the term does not include packages which cannot be commercially transported from one State to another.

While a perfectly lawful act may not be impugned by the fact that the person doing it was impelled thereto by a bad motive, where the lawfulness or unlawfulness of the act is made an issue, the intent of the actor may be material in characterizing the transaction, and where a party, in transporting goods from one State to another, selects an unusual method for the express purpose of evading or defying the police laws of the latter State the commerce clause of the Federal Constitution cannot be invoked as a cover for fraudulent dealing.

This court adheres to its decision in *Austin* v. *Tennessee*, 179 U. S. 343, that small pasteboard boxes each containing ten cigarettes, and sealed and stamped with the revenue stamp, whether shipped in a basket or loosely, not boxed, baled or attached together, and not separately or otherwise addressed but for which the express company has given a receipt and agreement to deliver them to a person named therein in another State, are not original packages and are not protected under the commerce clause of the Federal Constitution from regulation by the police power of the State.

A classification in a state taxation statute in which a distinction is made between retail and wholesale dealers is not unreasonable and § 5007, Iowa Code, imposing a tax on cigarette dealers is not invalid as denying equal protection of the laws to retail dealers, because it does not apply to jobbers and wholesalers doing an interstate business with customers outside of the State.

THIS was a petition by the owner and the tenant of a certain

room in the city of Marshalltown, Iowa, addressed to the board
of supervisors, for the remission of a tax of $300, imposed upon
the business of selling cigarettes, which business was carried
on by Charles P. Cook, one of the plaintiffs in error. The
petition being denied, an appeal was taken to the District
Court, where a demurrer was interposed, which was sustained
by that court, and an appeal taken to the Supreme Court,
where the judgment of the District Court was affirmed. 119
Iowa, 384.

*Mr. Junius Parker*, with whom *Mr. W. W. Fuller* and *Mr.
Frank S. Dunshee* were on the brief, for plaintiffs in error:

There is a distinguishing difference between *Austin* v. *Tennessee*, 179 U. S. 343, and this case in that in the *Austin* case
many parcels were aggregated, and thrown into an open basket
and so carried. Thus associated in their carriage they could
not be segregated after arrival so to make each an original
package. Immunity is given to original packages alike to the
retailer and wholesaler. Nor will immunity given to a large
package be denied to a small one on account of its size. Cigarette packages vary as to size. The ordinary original package
of cigarettes is frequently of the size of the packages in this
case. The fact that the manufacturer hoped to be able to
introduce cigarettes in these packages into Iowa without violating the state statute does not deprive him of the protection
of the interstate commerce provisions of the Federal Constitution.

Under *Austin* v. *Tennessee, supra; Brown* v. *Maryland*, 12
Wheat. 419; *Bowman* v. *Railroad Co.*, 125 U. S. 465; *Leisy* v.
*Hardin*, 135 U. S. 100; *Vance* v. *Vandercook*, 170 U. S. 438;
*Rhodes* v. *Iowa*, 170 U. S. 412, and *Schollenberger* v. *Pennsylvania*, 171 U. S. 1, cigarettes that are manufactured without
the State of Iowa are, from the time they are put in transit
until the importer in Iowa breaks the original package, or after
he has himself disposed of such original package, under the
exclusive regulation of Congress. This power of regulation

includes the power to absolutely prohibit this interstate traffic in them, *Lottery Case,* 188 U. S. 321. While this *status* continues and this authority of Congress may be exercised, the legislature of Iowa is as utterly powerless to regulate such transit and first disposition—if made before breaking of original package—as it would be powerless to regulate affairs in Illinois or Nebraska, or any other adjacent or non-adjacent State.

Congress has not legislated in regard to trade in cigarettes and this silence means that the trade so far as it is interstate and under congressional control shall be free and unrestrained. *Robbins* v. *Shelby Taxing District,* 120 U. S. 489, 493.

These cigarettes were in packages prescribed by the internal revenue law and were original packages entitled to immunity from state regulation. *Washington* v. *Coovert,* unreported, but see 164 U. S. 702; *In re Minor,* 69 Fed. Rep. 233; *The McGregor Case,* 76 Fed. Rep. 956. If a legislature may prohibit sale of cigarettes it may prohibit that of coffee. Tiedeman on Police Power, 2. Only where Congress abdicates its power may the States control a traffic as is the case, in regard to liquor. Wilson Act construed in *In re Rahrer,* 140 U. S. 545; *Gibbons* v. *Ogden,* 9 Wheat. 1, 190. The state statute involved is void as it amounts to a denial of equal protection of the laws. The classification excepting jobbers and wholesalers doing an interstate business with customers outside the State is arbitrarily unequal and unjust. *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540; *Cotting* v. *Stockyards Co.,* 183 U. S. 79, 112. Section 5007, Iowa Code, is also void as against the owner as a taking of property without due process of law in that it fixes a lien and a personal judgment without any sort of notice against the owner of the real estate in which the cigarettes are sold. *McMillan* v. *Anderson,* 95 U. S. 37, and *Hagar* v. *Reclamation District,* 111 U. S. 701, distinguished. A party leasing a building for building purposes has no knowledge that it may be used for a sale in violation of the statute. *McBride* v. *State,* 70 Mississippi, 516; as to what is due process of law,

see *Low* v. *Kansas*, 163 U. S. 81; *Hurtado* v. *California*, 110 U. S. 516.

*Mr. F. E. Northup* for defendant in error in this case and *Mr. Henry Jayne* for defendant in error in No. 150, argued simultaneously herewith.[1]

Section 5007, Code of Iowa, is not void as an attempt to regulate interstate commerce.

Whatever article of commerce is recognized as fit for barter or sale, when its manufacture is made subject to Federal regulation and taxation, must be regarded as a legitimate article of commerce although it may be within the police power of the States. *In re Rahrer*, 140 U. S. 559; *Brown* v. *Maryland*, 12 Wheat. 419; *Leisy* v. *Hardin*, 135 U. S. 100; *Austin* v. *Tennessee*, 101 Tennessee 563. And if Congress authorizes its importation, no State can prohibit its introduction. *License Cases*, 5 How. 504.

A State, however, is not bound to furnish a market for such articles, or to abstain from passing any law which may be necessary or advisable to guard the health or morals of its citizens, although such law may discourage importations or diminish profits of the importer. *Boston Beer Co.* v. *Kansas*, 97 U. S. 25; *Mugler* v. *Kansas*, 123 U. S. 623; *Foster* v. *Kansas*, 112 U. S. 201.

Police power may be lawfully resorted to for the purpose of preserving public health, safety and morals; a large discrimination is necessarily vested in the legislature to determine what the public interests require and what measures are necessary for the protection of such interests. Cases *supra* and *Holden* v. *Hardy*, 169 U. S. 366, 392; *Barbmeyer* v. *Iowa*, 18 Wall. 129; *Powell* v. *Pennsylvania*, 127 U. S. 678; *Plumley* v. *Massachusetts*, 155 U. S. 161; *Vanderbilt* v. *Adams*, 7 Cow. (N. Y.) 349; *Wilson* v. *Blackbird &c. Co.*, 2 Peters, 245; *Sherlock* v. *Alling*, 93 U. S. 99; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196; *Mo. Pac. Ry. Co.* v. *Finley*, 38 Kansas, 550;

---

[1] See *Hodge* v. *Muscatine County*, *post*, p. 276.

*Kimmish* v. *Ball*, 129 U. S. 217; *Waterbury* v. *Newton*, 50 N. J. L. 534.

A State cannot prohibit the sale of articles of lawful commerce, when imported, by the importer, when such articles do not become a part of the common mass of property within the State, and so long as they remain in the original packages in which they were imported. *Leisy* v. *Hardin*, 135 U. S. 100; *Schollenberger* v. *Pennsylvania*, 171 U. S. 1; *Bowman* v. *Chicago &c. Ry. Co.*, 125 U. S. 465; *State* v. *Winters*, 25 Pac. Rep. 237; *May* v. *New Orleans*, 178 U. S. 496. But the original package must be of such form and size as is so used by producers or shippers for the purpose of securing both convenience in handling and security in transportation of merchandise between dealers, *in the ordinary course of actual commerce*. *Commonwealth* v. *Schollenberger*, 156 Pa. St. 201; *McGregor* v. *Cone*, 104 Iowa, 465.

Where the mode of putting up a package is not adapted to meet the requirements of interstate commerce, but those of an unlawful domestic retail trade, the dealer will not be protected on the ground that he is selling an original package. *Austin* v. *Tennessee*, 101 Tennessee, 563; *Commonwealth* v. *Bisham*, 138 Pa. St. 639; *Haley* v. *Nebraska*, 42 Nebraska, 556; *S. C.*, 60 N. W. Rep. 962; *Commonwealth* v. *Fisherman*, 128 U. S. 687; *Commonwealth* v. *Paul*, 170 Pa. St. 284; *State* v. *Chapman*, 47 N. W. Rep. 411. The size of the package is immaterial where *bona fide* transactions are carried on. 5 How. 608; *Commonwealth* v. *Zelt*, 138 Pa. St. 615; *Austin* v. *Tennessee*, 101 Tennessee, 563; *S. C.*, 179 U. S. 343.

Section 3392, Rev. Stat., as to size of cigarette packages is for the purpose solely of taxation and the better enforcement of the internal revenue law.

The court must consider in determining this question that the transaction was not in good faith, and the packages were not shipped in the usual and ordinary manner and according to the customary usages of trade and commerce.

The act should not be held unconstitutional unless it is a

clear usurpation of prohibited power. Objections as to the policy of the act cannot be considered. *People* v. *Jackson Co.,* 9 Michigan, 285; *New Orleans G. L. Co.* v. *Louisiana L. & H. Co.,* 115 U. S. 650; Black on Const. Prohib. § 62; Cases reported in 58 California, 635; 2 Iowa, 280; 13 Minnesota, 341, 349; 68 N. Y. 381; 30 Iowa, 9; 61 Am. Dec. 338, *n.*; 6 Am. Ency. Law, 2d ed., 921, *n.*; 20 Iowa, 338; 22 Atl. Rep. 923; 33 Hun, 279; 80 Missouri, 678; 20 Florida, 522; 9 Indiana, 380; 15 Texas, 311; 74 Am. Dec. 522; 61 Am. Dec. 331 *n.*; 15 Iowa, 304; 2 Iowa, 165.

The statute is not unconstitutional as applying more than one subject or covering matters not within its scope. *Duensing* v. *Roby,* 142 Indiana, 168; *Perry* v. *Gross,* 41 N. W. Rep. 799; *Larne* v. *Tiernan,* 110 Illinois, 173. It is not unconstitutional because not uniform in operation between jobbers and wholesalers doing interstate business and citizens of the State. See original package cases cited *supra;* nor does it deprive any one of his property without due process of law. *Smith* v. *Skow,* 97 Iowa, 640; *Hodge* v. *Muscatine County,* 96 N. W. Rep. (Iowa) 969.

The power to tax is inherent in the Government. It is a legislative power and is limited only by constitutional provisions, subject thereto, it extends to everything and everybody, as the legislature may see fit to apply it. Courts cannot control its exercise, unless such exercise conflicts with constitutional limitations. 25 Am. & Eng. Ency. Law, 18, and cases cited; *Ferry* v. *Deneen,* 82 N. W. Rep. (Iowa) 424; 27 Iowa, 28; 76 Illinois, 561; 52 Wisconsin, 53; *Hagar* v. *Reclamation Dist.,* 111 U. S. 701.

The power to impose privilege and occupation taxes exists independently and concurrently in the state and Federal government, subject to constitutional restrictions. Being in the discretion of the legislature, it may select some for this purpose and exempt others, and select the mode in which taxes shall be levied. 25 Am. & Eng. Ency. Law, 21 *n.*, 479, 481, 492; *Ward* v. *Maryland,* 12 Wall. 418; 5 How. 504; *License Tax Cases,* 5 Wall. 71; 69 Illinois, 80; U. S. Const. Art. I, § 9,

par. 5; 60 Am. Dec. 581; 133 Massachusetts, 161; 62 Pa. St. 491; 89 Georgia, 639; 33 Fed. Rep. 121.

The demand made for money under the police power is secondary to the police regulation out of which the demand grows; while in the case of taxation the principal object is revenue. This distinction is not to be lost sight of, even though the procedure for collection may be similar in both cases. 46 Michigan, 183; 46 Illinois, 392; Cooley on Taxation, 2d ed., 586; 11 Johns, 77; *License Cases,* 5 Wall. 462.

A tax imposed both for regulation and revenue is not for that reason invalid. *Hodge* v. *Muscatine County,* 96 N. W. Rep. 968; 2 Desty on Taxation, 1384.

An occupation charge is different from a general tax, and the constitutional provisions that all taxes shall be equal and uniform apply only to general taxation. It is sufficient if all in the same class are taxed alike. 49 California, 557; 102 Illinois, 560; 11 Ohio St. 449; 46 N. J. Eq. 270; 62 Pa. St. 491; 4 Texas, 137; 6 Wall. 606; 82 N. W. Rep. 424; 29 Wisconsin, 592; 84 Maine, 215; 81 Virginia, 473; 66 N. W. Rep. 893.

In passing upon the mulct liquor law the Supreme Court of Iowa held that such tax was a charge for carrying on the business and acted the same upon all persons and property coming within its provisions; that as the law was general in its scope and provisions, all persons liable thereunder must appear and pay the tax without notice, and that notice was "no more necessary to the property owner than in cases of taxes generally." *Re Smith,* 73 N. W. Rep. 605; *Smith* v. *Skow,* 66 N. W. Rep. 893.

The tax is also a penalty and rules governing ordinary taxes do not govern. *Ferry* v. *Deneen,* 82 N. W. Rep. 424.

The meetings of the board of revision are fixed by law and of these all persons must take notice. *Palmer* v. *McMahon,* 133 U. S. 660; *Glidden* v. *Harrington,* 189 U. S. 255; *Davidson* v. *New Orleans,* 96 U. S. 97; *McMillan* v. *Anderson,* 95 U. S. 37.

MR. JUSTICE BROWN, after making the foregoing state-
ment, delivered the opinion of the court.

This case involves the constitutionality of section 5007 of
the Iowa Code, imposing a tax of $300 per annum upon every
person, and also upon the real property and the owner thereof,
whereon cigarettes are sold or kept for sale. The section is
printed in full in the margin.[1]

The facts of the case were that the plaintiff, Charles P. Cook,
carried on a retail cigar and tobacco store upon premises leased
by him from his co-plaintiff. Cook ordered his cigarettes of
the American Tobacco Company, at St. Louis. They were
delivered to an express company, and brought by such com-
pany from St. Louis, or other places outside of the State of
Iowa, directly to the place of business of the plaintiff, in small
pasteboard boxes, containing ten cigarettes each, each package
being sealed and stamped with the revenue stamp. These
packages were shipped absolutely loose, and were not boxed,
baled, wrapped or covered, nor were they in any way attached
together. Nothing appears in the record to indicate the means
used in transporting these cigarettes from the factory of the
manufacturer to the place of business of the retail dealer, and
we are left to infer that they were shoveled into and out of a
car, and delivered to plaintiffs in that condition. The pack-

---

[1] SEC. 5007. Tax on sale.—There shall be assessed a tax of three hundred
dollars per annum against every person, partnership or corporation, and
upon the real property, and the owner thereof, within or whereon any
cigarettes, cigarette paper or cigarette wrapper, or any paper made or pre-
pared for the use in making cigarettes, or for the purpose of being filled with
tobacco for smoking, are sold or given away, or kept with the intent to be
sold, bartered or given away, under any pretext whatever. Such tax shall
be in addition to all other taxes and penalties, shall be assessed, collected and
distributed in the same manner as the mulct liquor tax, and shall be a per-
petual lien upon all property both personal and real used in connection with
the business; and the payment of such tax shall not be a bar to prosecution
under any law prohibiting the manufacturing of cigarettes, or cigarettes paper
or selling, bartering or giving away the same. But the provisions of this
section shall not apply to the sales by jobbers and wholesalers in doing an
interstate business with customers outside of the State.

ages were not separately or otherwise addressed, but at the time they were delivered to the express company the driver gave a receipt showing the number of packages and the name of the person to whom they were to be sent, retaining a duplicate himself.

The constitutionality of the act as applied to the plaintiffs was attacked upon two grounds:

(1) That it was an attempt to interfere with the power of Congress to regulate commerce between the States.

(2) That it denied to the plaintiffs the equal protection of the laws.

The argument of the plaintiffs is the same as that which was pressed upon our attention a few years ago in *Austin* v. *Tennessee,* 179 U. S. 343, that the packages of ten cigarettes were each the original packages in which these cigarettes were imported from other States, and that under the decisions of this court in *Brown* v. *Maryland,* 12 Wheat. 419; *Leisy* v. *Hardin,* 135 U. S. 100, and *Shollenberger* v. *Pennsylvania,* 171 U. S. 1, they were entitled to the immunities attaching to original packages. We reviewed these and a large number of other cases in our opinion, and came to the conclusion that these boxes were in no just sense original packages within the spirit of the prior cases, and that their shipment in this form was not a *bona fide* transaction, but was merely a convenient subterfuge for evading the law forbidding the sale of cigarettes within the State. This case differs from that only in the fact that in the *Austin* case the packages were thrown loosely into baskets, which were shipped on board the train and carried to Austin's place of business. These baskets, it is argued, might have been considered as the original packages.

This difference, however, was not insisted upon as distinguishing the two cases in principle. Indeed it was admitted to be one not of "great magnitude or seeming legal significance." The main argument of the plaintiffs was frankly addressed to a reconsideration of the principle involved in the *Austin* case, and a reinsistence upon the position there taken,

that the packages in which the cigarettes were actually shipped must govern, and that we cannot look to the motives which actuated such shipment, or to the fact that ordinary importations of cigarettes were made in boxes containing a large number of these so-called original packages. We have carefully reconsidered the principle of that case, and, without repeating the arguments then used in the opinions, we have seen no reason to reverse or change the views there expressed.

The term original package is not defined by any statute, and is simply a convenient form of expression adopted by Chief Justice Marshall in *Brown* v. *Maryland*, to indicate that a license tax could not be exacted of an importer of goods from a foreign country who disposes of such goods in the form in which they were imported. It is not denied that in the changed and changing conditions of commerce between the States, packages in which shipments may be made from one State to another may be smaller than those "bales, hogsheads, barrels or tierces," to which the term was originally applied by Chief Justice Marshall, but whatever the form or size employed there must be a recognition of the fact that the transaction is a *bona fide* one; and that the usual methods of interstate shipment have not been departed from for the purpose of evading the police laws of the States.

In *Leisy* v. *Hardin*, 135 U. S. 100, quarter barrels, and even one-eighth barrels and cases of beer, were recognized as original packages or kegs, though the size of such packages and the usual methods of transporting beer do not seem to have been made the subject of discussion. There is nothing in the opinion to indicate that it was not legitimate to ship beer in kegs of this size. So, too, in *Shollenberger* v. *Pennsylvania*, oleomargarine transported and sold in packages of ten pounds weight was recognized as *bona fide*, but it was expressly found by the jury in that case that the package was an original package, as required by the act of Congress, and was of such "form, size and weight as is used by producers or shippers for the purpose of securing both convenience in handling and security in trans-

portation of merchandise between dealers in the ordinary course of actual commerce, and the said form, size and weight were adopted in good faith, and not for the purpose of evading the laws of the Commonwealth of Pennsylvania, said package being one of a number of similar packages forming one consignment, shipped by the said company to the said defendant." While it may be impossible to define the size or shape of an original package, the principle upon which the doctrine is founded would not justify us in holding that any package which could not be commercially transported from one State to another as a separate importation could be considered as an original package.

But it is insisted with much earnestness that in determining the lawfulness of sales in original packages we are bound to consider that package as original in which the articles were actually shipped, particularly where Congress, for the purpose of taxation, has prescribed a certain size of package to be separately stamped, and that we have no right to look beyond the letter of the term and inquire into the motives which dictated the size of the packages in each case. This argument was also made in the *Austin* case, was considered at some length, and held to be unsound. In delivering the opinion we said (p. 359): "The real question in this case is whether the size of the package in which the importation is actually made is to govern; or, the size of the package in which *bona fide* transactions are carried on between the manufacturer and the wholesale dealer residing in different States. We hold to the latter view. The whole theory of the exemption of the original package from the operation of state laws is based upon the idea that the property is imported in the ordinary form in which, from time to time immemorial, foreign goods have been brought into the country."

While it is doubtless true that a perfectly lawful act may not be impugned by the fact that the person doing the act was impelled thereto by a bad motive, yet where the lawfulness or unlawfulness of the act is made an issue the intent of the

actor may have a material bearing in characterizing the trans-. action. We have had frequent occasions to treat of this subject in passing upon the validity of legislative acts or municipal ordinances. So where the lawfulness of the method used for transporting goods from one State to another is questioned, it may be shown that the intent of the party concerned was not to select the usual and ordinary method of transportation, but an unusual and more expensive one, for the express purpose of evading or defying the police laws of the State. If the natural result of such method be to render inoperative laws intended for the protection of the people, it is pertinent to inquire whether the act was not done for that purpose, and to hold that the interstate commerce clause of the Constitution is invoked as a cover for fraudulent dealing, and is no defense to a prosecution under the state law.

The power of Congress to regulate commerce among the States is perhaps the most benign gift of the Constitution. Indeed it may be said that without it the Constitution would not have been adopted. One of the chief evils of the confederation was the power exercised by the commercial States of exacting duties upon the importation of goods destined for the interior of the country or for other States. The vast territory to the west of the Alleghenies had not yet been developed or subdivided into States, but the evil had already become so flagrant that it threatened an utter dissolution of the confederacy. The article was adopted that all of the States of the Union might have the benefit of the duties collected at the maritime ports, and to relieve them from the embarrassing restrictions imposed upon the internal commerce of the country. But the same policy which authorizes the use of this power as a shield to protect commerce from the vexatious interference of the States forbids its employment as a sword to assail measures designed for the preservation of the public health, morals, and comfort. States may differ among themselves as to the necessity and scope of such measures, but so long as they are adopted in good faith, with an eye single to the

public welfare, they are as much entitled to the recognition of the general Government as if they were uniformly adopted by all the States.

While this court has been alert to protect the rights of non-resident citizens and has felt it its duty, not always with the approbation of the state courts, to declare the invalidity of laws throwing obstacles in the way of free intercommunication between the States, it will not lend its sanction to those who deliberately plan to debauch the public conscience and set at naught the laws of a State. The power of Congress to regulate commerce is undoubtedly a beneficent one. The police laws of the State are equally so, and it is our duty to harmonize them. Undoubtedly a law may sometimes be successfully and legally avoided if not evaded, but it behooves one who stakes his case upon the letter of the Constitution not to be wholly oblivious of its spirit. In this case we cannot hold that plaintiffs are entitled to its immunities without striking a serious blow at the rights of the States to administer their own internal affairs.

2. The argument that section 5007 of the Iowa Code denies to the plaintiffs the equal protection of the laws is based upon an alleged discrimination arising from the final sentence that "the provisions of this section shall not apply to the sales by jobbers and wholesalers in doing an interstate business with customers outside of the State."

We are referred in this connection to a series of well-known cases arising under the anti-trust laws of the several States, to the effect that laws against combinations in trade must be uniform in their application as applied to all persons within the same general class. The leading case upon this point is *Connolly* v. *Union Sewer Pipe Company,* 184 U. S. 540, where a law of Illinois against combinations to regulate prices and productions, and create restrictions, was held to be invalid by reason of the exemption of agricultural productions or live stock while in the hands of the producer or raiser.

A similar case is that of *Cotting* v. *Kansas City Stock Yards*

*Co.*, 183 U. S. 79, wherein a statute of Kansas regulating the prices to be paid for the use of public cattle stock yards was held invalid by reason of the fact that it was intended to apply only to the stock yards of Kansas City, and not to other companies or corporations engaged in like business in other portions of the State.

These cases, however, have but limited application to laws imposing taxes, where the right of classification is held to permit of discrimination between different trades and callings when not obviously exercised in a spirit of prejudice or favoritism. *Kentucky Railroad Tax Cases,* 115 U. S. 321; *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283; *American Sugar Refining Company* v. *Louisiana,* 179 U. S. 89; *Bell's Gap Railroad Company* v. *Pennsylvania,* 134 U. S. 232.

This distinction was recognized by Mr. Justice Harlan in *Connolly* v. *Union Sewer Pipe Company,* on page 562, wherein it is said "a State may in its wisdom classify property for purposes of taxation, and the exercise of its discretion is not to be questioned in a court of the United States, so long as the classification does not invade rights secured by the Constitution of the United States." It can scarcely be doubted that, if the *Connolly* case had dealt with the subject of taxation, a discriminative tax upon producers of agricultural products, either greater or less than that imposed upon other manufacturers or producers, might have been held valid without denying to either party the equal protection of the laws. The holding in that case was simply that, considering that the object of the statute was to prevent combinations of capital or skill for certain purposes, the exemption of farmers was based upon no sound distinction, and rendered the law invalid as to other classes included within it.

There is a clear distinction in principle between persons engaged in selling cigarettes generally or at retail, and those engaged in selling by wholesale to customers without the State. They are two entirely distinct occupations. One sells at retail, and the other at wholesale one to the public generally,

and the other to a particular class; one within the State, the other without. From time out of mind it has been the custom, of Congress to impose a special license tax upon wholesale dealers different from that imposed upon retail dealers. A like distinction is observed between brewers and rectifiers, wholesale and retail dealers in leaf tobacco and liquors, manufacturers of tobacco and manufacturers of cigars, as well as peddlers of tobacco. It may be difficult to distinguish these several classes in principle, but the power of Congress to make this discrimination has not, we believe, been questioned.

Why the legislature should have made the distinction found in section 5007 is not entirely clear, but it probably arose from the belief that the imposition of a license tax upon wholesale exporters of cigarettes would be as much an interference with interstate commerce as the imposition of a similar tax upon importers from abroad was held to be in *Brown* v. *Maryland*. We are satisfied the section is not open to the objection of denying to the dealers in cigarettes the equal protection of the laws.

The judgment of the Supreme Court is, therefore,

*Affirmed.*

Mr. Justice White, concurring.

The only difference between this and the *Austin* case is that in this no basket was used to hold the many small packages shipped at one and the same time to the same person. In my opinion, such fact is not sufficient to take the case out of the reach of the reasoning stated by me for concurring in the decree in the *Austin* case. For the reasons given for my concurrence in that case I concur in the judgment rendered in this.

The Chief Justice, Mr. Justice Brewer and Mr. Justice Peckham dissented.