GOODRICH, Plaintiff in error, vs. THE STATE, Defendant in error.

*October 1—October 15, 1907.*

*Statutes: Construction: Presumption: "Cigarettes."*

1. It is presumed in enacting sec. 4608*f*, Stats. (Supp. 1906; Laws of 1905, ch. 82), outlawing "cigarettes," that the legislature used that word to describe some well known, recognized, and definite article.

2. At the time of the passage of sec. 4608*f*, Stats. (Supp. 1906; Laws of 1905, ch. 82), outlawing "cigarettes," what is therein termed a "cigarette" is held to have had as its special characteristic a paper wrapper and a peculiar kind and quality of tobacco, distinguished by its light color and mildness, and to be a commodity recognized and described thereby, and hence the prohibition of the statute does not cover a cylindrical roll of tobacco wrapped with leaf tobacco, such being then generally known as a "cigar."

[3. It seems that should a tobacco-wrapped cigar be devised, the equivalent of the acknowledged "cigarette," it would be the duty of the court to declare it within the legislative proscription.]

ERROR to review a judgment of the municipal court of Milwaukee county: A. C. BRAZEE, Judge. *Reversed.*

The plaintiff in error, hereinafter called the defendant, on March 11, 1907, sold to the prosecuting witnesses a tin box containing within what were marked and called "Between the Acts Little Cigars," each a cylindrical roll of tobacco about two and three-fourths inches long by one-third

of an inch in diameter, the exterior consisting of a section of wrapper leaf tobacco and the interior of cigar leaf tobacco, partly Wisconsin, partly New York and Pennsylvania, and partly Cuban, said leaves being cut in long strips, the length of the roll, for purposes of blending. The state rested upon proof of the sale and introduction of the articles themselves. The defense proved, without dispute, that the material was the same as that used generally in cigars and differed radically from the kinds of tobacco used in the ordinary paper-bound cigarette; that they were manufactured in cigar factories as distinct from cigarette factories, it being necessary to separate such manufacture in order to prevent mingling of odors of the different kinds of tobacco to the detriment of both products. It was further proved that what are commonly known as cigars of all sizes are made sometimes of unbroken leaves, sometimes of scraps, and sometimes of ground and broken up tobacco; that they are made sometimes with one end closed to a point, and at other times cylindrical, with both ends open; that the article in question is made in the same manner as cigars, the wrapper leaf for each being cut separately, moistened, and rolled around the filler, while paper-bound cigarettes are ordinarily made by filling long cylinders of paper with tobacco and cutting them to the proper length; that cigarettes are made of mild and lighter color tobaccos, such as Turkish, bright Virginia, and North Carolina, and that they are made indiscriminately of granulated, ground, or long-cut shreds tobacco; that they are never made of Cuban, Wisconsin, Pennsylvania, or Connecticut tobacco; that many paper-bound cigarettes are as large as large-size cigars and many of them cost more than such large cigars; that the commodity in question has the distinctive odor and taste of a cigar, and wholly lacks such distinctive characteristics of cigarettes, significant among which are the flavor of the kind of tobacco used and of the paper wrapper consumed with such tobacco. Further, the defendant offered

evidence, received by the court over objection, from a number of people intimately connected with the business of dealing in cigars and cigarettes, who testified that neither in the trade nor in the use of the terms by the public would the term "cigarettes" be understood as including an article made entirely of tobacco, especially tobacco of the kind used in the article sold by defendant. It appeared that small cigars of the general type of the article in question had been in well-known use continuously since 1891 or earlier. They all agreed that the recognized distinction between cigars and cigarettes in the trade and by the public was the tobacco wrapper as distinguished from paper or some equivalent and the different character of tobacco used in the manufacture; that for the making of cigars seed leaf tobacco is needed, which must go through a sweating process for approximately a couple of years and be otherwise carefully treated to eliminate some of the objectionable elements, while cigarette tobacco is used as it comes, thrown into the machine, and cut or ground up. A jury being waived, the trial court found the defendant guilty as charged in the complaint and duly sentenced him; to all of which rulings due exception was reserved, as also to the overruling of a motion for new trial, and to review such judgment the defendant sued out this writ of error.

For the plaintiff in error there was a brief by *Winkler, Flanders, Bottum & Fawsett,* and oral argument by *C. F. Fawsett.*

For the defendant in error there was a brief by the *Attorney General, Francis E. McGovern,* district attorney, and *Norman L. Baker,* assistant district attorney, and oral argument by *Mr. Baker.*

DODGE, J. In proper deference to the legislative branch of government we can, of course, entertain no doubt that in enacting sec. 4608f, Stats. (Supp. 1906; Laws of 1905, ch.

82), outlawing "cigarettes," the legislature used that word to describe some well known, recognized, and definite article. It is not conceivable that they meant to denounce criminality upon a dealer in a theretofore legitimate article of commerce without making certain what that article is, so that ordinary law-abiding persons would be likely through honest mistake or difference of opinion to fall into crime. If the word is certain and definite in its significance or extent, then if some commodity was at the time of its use recognized as described by it, and other commodities were not commonly described by the word, but by other designation, and understood by a large part of the community not to fall within the meaning of such word, it is but fair to the legislature to assume that they meant to describe and denounce only the former article. This is but reiteration of the trite rule that criminal statutes are to be strictly construed, to the end that the well-meaning citizen shall not unconsciously become a criminal. 26 Am. & Eng. Ency. of Law (2d ed.) 661; *Perrault v. M., St. P. & S. S. M. R. Co.* 117 Wis. 520, 525, 94 N. W. 348; *Miller v. C. & N. W. R. Co., ante,* p. 183, 113 N. W. 384. In 1905, as we know by common knowledge and by undisputed evidence, there was an article of trade and consumption in tremendous quantities which every one knew and designated as a "cigarette." Large factories had been established and many machines invented and patented for its manufacture. Its importation and manufacture had been made a subject of regulation and revenue by the law of the land. It had been the subject of public statistical and governmental report; of attack and defense in public print; of sale lists, advertisements, and contracts. That article was tobacco of a peculiar kind rolled in a paper wrapper. There were also some variants, such as those with corn-husk wrappers of the Mexican, uniformly called "cigarettes" where known at all, but not generally known. At the same time there were known and in common use rolls of tobacco covered with tobacco wrapper

leaf in almost limitless variety of quality and kind, shape, and size; some approximating in shape the well-known cigarette, but varying widely in size; others approximating the size, but differing in shape; while others approximated both size and shape of the more common cigarettes. That any of these tobacco-wrapped rolls were ever known to any portion of the community as cigarettes is not made to appear. The fact that all varieties are commonly called cigars is matter of common knowledge and of proof in this case, and the gradations between the various kinds, sizes, and shapes are so indefinite, trifling, and intangible as to render practically impossible any line of demarcation. Upon such a condition the primary inference of intention would apply the word "cigarettes" to those paper wrappers filled with tobacco which every one knew by that name. That *prima facie* impression receives support from many things appearing in the record or of such general notoriety that we may take notice of them. Among these is the fact that the word "cigarette" had a definite legal and statutory significance throughout the United States under the revenue statutes of Congress, which, classifying cigars and cigarettes and recognizing that some of each weigh more than three pounds per thousand and that some of each weigh less, declare "that all rolls of tobacco or any substitute therefor wrapped with tobacco shall be classed as cigars, and all rolls of tobacco or any substitute therefor wrapped in paper or any substitute, other than tobacco, shall be classed as cigarettes." Again, the only judicial utterance on the subject prior to our statute which has been found is in *Kappes v. Chicago,* 119 Ill. App. 436, 442, where, in discussing a statute forbidding the sale of cigarettes without license, it is said: "We think the court may take judicial notice that cigarettes are generally made of tobacco rolled within small pieces of tissue paper." Further, all lexicographers agree that the paper-wrapped rolls of tobacco are cigarettes, though they differ as to whether the word may also include similar rolls wrapped in tobacco.

While the foregoing would seem to be sufficient to mark with reasonable exactness the meaning of the word used by the legislature, we further think that the object of the legislation, if it may properly be considered at all, tends to confirm that meaning. As appears by uncontradicted evidence, what is generally termed a "cigarette" in the tobacco trade has, as its special characteristics, the paper wrapper and the peculiar kind and quality of tobacco, which is distinguished by its light color and mildness. The word and the name came to this country together from France, where had been developed, either by way of refinement or degeneracy in the tobacco habit, the custom of inhalation of the smoke, to which was substantially necessary a mild tobacco of peculiar flavor, such as would not unduly inflame the breathing passages. This end was secured by the use formerly of Egyptian and Persian tobaccos, which, being unfit for manufacture into the form of cigars, were inclosed in paper wrappers. As the habit was adopted and grew in this country, it was attacked by many people as injurious, on two grounds especially: one, the presence in combination with the tobacco smoke of the results of the burning paper. Whether this was in fact specially injurious or not we perhaps have not judicial knowledge. Suffice it to say that it has been long so contended, although denied. Another serious ground of disapproval of cigarettes was the inhalation of the smoke. But probably the consideration which has most tended to condemnatory legislation against cigarettes has been their use by the very young. This objectionable fact has undoubtedly been due mainly to the kind of tobacco which has been a general though not universal characteristic of the paper-wrapped cigarette, originally selected because of adaptability to inhalation, but also serving, by reason of its mildness, to remove the protection which nature placed in the way of acquiring habits of use of the more vigorous tobacco commonly used in cigars. Before the day of the cigarette, mastery of the tobacco habit was obstructed by agonies of nausea usually

sufficient to postpone it to a period of at least reasonable maturity. Uncontradicted evidence establishes that the little cigars involved in this case are made of the same kinds of tobacco used in other cigars and wholly foreign to the cigarette of commerce. They are therefore free from at least the three most urged objectionable characteristics of the articles which we are satisfied were intended to be proscribed by the legislature, viz., the paper wrapper, adaptability for inhalation, and ease of consumption by the novice.

Counsel for the state urges that the etymological meaning of cigarette is "small cigar," and that we cannot depart from it. One trouble with this argument is that the word has no English etymology. In the French it doubtless has and had, but before its translation to English-speaking countries it had become principally used to designate a particular type of small cigars and was imported with the article so designated and has never here been used as the equivalent of "small cigar." Hence its foreign etymology is hardly of significance, certainly not conclusive. A most serious difficulty with the state's contention for a classification between "cigars" and "cigarettes" which would include some tobacco-wrapped rolls under the latter designation is that it could give no certainty of demarcation. If some tobacco-covered rolls of tobacco are "cigarettes" and others not, how shall the ordinary citizen or the courts decide which are one and which the other. Counsel suggests size, but where, between the smallest and the largest, shall the line be drawn? The gradations are almost infinitesimal, and some paper-covered cigarettes are as large as cigars which every one would recognize as such. Again, he suggests the cylindrical shape and open ends, but both these are characteristic of the cheroot and the stogy, either of which offers complete antithesis to the gentle cigarette so easily mastered by the school boy. Again, the fine granulated tobacco filler is urged, but that is characteristic of only some cigarettes and is also character-

istic of many large and strong cigars, and, by the way, is not present in the article before us. Such indefiniteness and un-certainty would be wholly out of place in a penal statute, and we cannot believe the legislature intended it.

We reach the conclusion that the articles sold by defendant are not "cigarettes" within any reasonable meaning of the word in sec. 4608f, Stats. (Supp. 1906; Laws of 1905, ch. 82), and that the present conviction cannot be sustained. In so concluding, however, we do not mean to declare the im-possibility of a tobacco-wrapped cigarette. We find no proof and have no knowledge that such a thing existed at the time of the legislation or now exists, but it is at least conceivable that so complete an equivalent of the acknowledged cigarette might be devised, perhaps for the very purpose of evading the law, that a court should declare it within the legislative proscription.

*By the Court.*—Judgment reversed, and cause remanded with direction to render judgment discharging the plaintiff in error.