10436.   ALSPAUGH *v.* TOWN OF CADWELL.

1. Violation of an ordinance of the Town of Cadwell, by the sale and delivery of goods without license, was sufficiently charged by the accusation, as amended by agreement; and the demurrer to the accusation was properly overruled.

2. The record shows an ordinance of the Town of Cadwell which provides for a license tax for selling cigarettes and tobacco.

3. The evidence supports the allegations in the accusation and the judgment rendered by the mayor.

4. The interstate-commerce clause of the Federal constitution is not involved in this case.

DECIDED JUNE 13, 1919.

Certiorari from Laurens superior court—Judge Kent. March 8, 1919.

Application for certiorari to review this decision was denied by the Supreme Court.

*J. S. Adams*, for plaintiff in error.

*Burch & Daley*, contra.

BLOODWORTH, J. Plaintiff in error was arraigned before the mayor of the Town of Cadwell, charged "with the offense of selling and delivering goods; for the said F. W. Alspaugh, on the 10th day of June in the year of our Lord 1918, in the town aforesaid, did then and there unlawfully and with force and arms . . sell and deliver goods without business license, by selling, delivering, and collecting for 10,000 Reyno cigarettes to Cadwell Drug Company, and by selling, delivering, and collecting for other goods to Jenkins & Company and Parkerson & Company of said city, contrary to the laws of said town." A demurrer was filed to the accusation, and the demurrer was overruled. Upon the hearing before the mayor the following facts were agreed upon: "On the 10th day of June, 1918, the defendant, F. W. Alspaugh, sold to the Cadwell Drug Company in Cadwell, Georgia, said town being a municipal corporation in the said county of Laurens, and the said Cadwell Drug Company being a merchant engaged in a retail business in the town of Cadwell, 10,000 Reyno cigarettes, and on the same date sold and delivered to Parkerson & Company and Jenkins & Company a certain quantity of chewing tobacco. The Cadwell Drug Company was a merchant buying goods from manufacturers, wholesale merchants, jobbers, their agents, representatives, and others, and selling the same to the retail trade, and not for the consumption of the Cadwell Drug Company, and the price at which said cigarettes were sold was $5 per thousand, and when sold the same were delivered to the said Cadwell Drug Company and other purchasers, and upon the consummation of the sale and upon delivery the defendant collected $49 in settlement of the bill; and the other two parties buying the tobacco on the same day were each merchants engaged in the retail merchandise business, and said tobacco was

2

bought for the purpose of resale, and not for the purpose of consumption. Said Alspaugh had no place of business in Cadwell, nor did the Alsup Grocery Company, nor the R. J. Reynolds Tobacco Company. Said Alspaugh had not taken out license to conduct a business of wholesale or retail dealer in cigarettes and tobacco in the Town of Cadwell.

"It was further admitted as true that the Town of Cadwell had the following ordinances, to wit: 'Section 23. Any person or persons who shall carry on any trade, occupation, or business in the Town of Cadwell for which a license has been required for such trade, occupation, or business, whichever it may be, shall be guilty of the offense of violating this ordinance.' And from the ordinance passed January 11, 1918, is the following: 'Be it ordained by the mayor and town council of the Town of Cadwell, Georgia, and it is hereby ordained by authority of same, that the following licenses and taxes be levied and collected in the town for the year 1918.' And subdivision C of the item specified is the following: 'Cigarettes or cigarette paper, selling, furnishing, or storing the same, either wholesale or retail; tobacco, either wholesale or retail, $10.00.' And it was provided further, to wit: 'All business or trade not herein provided for will be fixed by mayor and council. Be it further ordained by the mayor and council that any person or persons violating any part of the license ordinance shall be punished as prescribed in section 5 of the Penal Code of the town.' And section 5 reads as follows: 'Any person or persons violating the ordinances of the Town of Cadwell made by [?] punished by fine, imprisonment, or work on the streets of said town, one or more of such punishments may be imposed, provided said fine shall not exceed fifty dollars ($50.00), and such imprisonment or time of labor shall not exceed thirty days.' It was further admitted as true that there was no wholesale grocery business or other business dealing by wholesale in cigarettes, cigars, or tobacco, in the Town of Cadwell; it was also admitted as a fact that the ordinances introduced into the record are all the ordinances or by-laws of the Town of Caldwell relating to the charge made against the defendant, and that said Town of Cadwell has no other ordinance relating to the charges made or covering the same, and that the charges made were not in violation of any other ordinance."

The defendant introduced J. H. Bailey, who swore in part: "I

reside in Macon, Ga. I am employed by the R. J. Reynolds Tobacco Company as division sales manager, located at Macon. I know F. W. Alspaugh. He is traveling salesman for R. J. Reynolds Tobacco Company, which is located in Winston-Salem, North Carolina, where they are engaged in the manufacture of tobacco and cigarettes. They dispose of their goods to wholesalers only by selling to jobbers. They do not sell retail trade. The paper I hold in my hand is a receipt for goods that he secured from the Alsup Grocery Company on June 10th. A part of these goods were delivered in Cadwell, Ga., and collected for, and the money turned over to the Alsup Grocery Company. This receipt is signed by the Alsup Grocery Company. We ship to the Alsup Grocery Company in carload lots or as near thereto as possible, the jobber paying the bill. In this instance the Alsup Grocery Company had already paid for the goods. The R. J. Reynolds Tobacco Company employs and pays Mr. Alspaugh his salary, and he is employed by the Alsup Grocery Company in no capacity whatever. When Mr. Alspaugh sold this tobacco to the Cadwell Drug Company he was selling it for Alsup Grocery Company. The Reynolds Tobacco Company had no interest in that particular delivery." Plaintiff in error, in his own behalf, testified as follows: "I sold the Cadwell Drug Company 10,000 cigarettes on the 10th day of June, and delivered them the day I sold them, and collected the money. I sold them for the Alsup Grocery Company. They were manufactured by the R. J. Reynolds Tobacco Company, by which concern I am employed. The Alsup Grocery Company has no control over me as salesman. When I take their goods out and sell them I am serving the R. J. Reynolds Tobacco Company by selling their goods for the jobber. The more goods I sell for the jobber, the more they can sell the jobber. I sold the Cadwell Drug Company 10,000 cigarettes, delivered them, collected the money, and turned it over to the Alsup Grocery Company. This is the form of receipt I gave for the goods." The receipt was in part as follows: "I hereby obligate myself to collect the cash from retail dealers, at the price named, for the above amount of tobacco, as I deliver it to the retailers, and I further agree to turn over promptly to the above jobber all money collected by me, or to return the tobacco in good condition to the above owner, the jobber, within six days." While no witness swore, so far as the record shows, that the place of business of the Alsup Grocery Com-

pany was in Dublin, Ga., the only reasonable inference from the evidence is that it was located there, and in the brief of counsel for each party it is stated that the Alsup Grocery Company is located in Dublin, Ga., and no injury can result to the plaintiff in error from this court taking this as true.

The trial resulted in the conviction of the accused, and he carried the case by writ of certiorari to the superior court. The certiorari was overruled, and Alspaugh excepted.

1. The overruling of the demurrer to the accusation, after the latter had been amended by agreement, was not error.

2. The first ground of exception is that "there is no ordinance of the Town of Cadwell levying a license tax against the defendant for selling cigarettes, either at wholesale or retail, in the Town of Cadwell." We think the ordinance set out above is a complete answer to this exception. It provides for a license tax for selling cigarettes and tobacco, either at wholesale or retail.

3. The second ground of exception is that "The judgment was contrary to law, contrary to evidence, and without law or evidence to support it, for the reason, under the facts disclosed by the record, he was not doing or conducting a business in the Town of Cadwell, but was a transient dealer or peddler, and there is no ordinance in the Town of Cadwell requiring a license of a transient trader or dealer or peddler selling cigarettes or tobacco at wholesale or retail in said town." The defendant was not accused of being a transient trader, dealer, or peddler. The accusation was based upon the ordinance above referred to, and we think the evidence abundantly supports the allegation in the accusation that he did sell, deliver, and collect for cigarettes and tobacco.

The third and fourth grounds of exception will be treated as abandoned, neither of them being argued in the brief of plaintiff in error.

4. The fifth ground of exception alleges that "The judgment was contrary to law and without law to support it, for the reason the defendant was selling interstate commerce for R. J. Reynolds Tobacco Company, who resided and are doing business out of the State of Georgia, and is therefore protected by the laws of interstate commerce." Under the facts of this case, the interstate-commerce clause of the Federal constitution is not involved. When the goods shipped by R. J. Reynolds Tobacco Company from Win-

ston-Salem, N. C., were received in Dublin, Ga., by the Alsup Grocery Company, the interstate shipment was completed, and a license tax assessed after this imposed no burden on the interstate shipment. The receipt introduced in evidence, as well as the testimony of the plaintiff in error, showed that the goods which he sold belonged to the Alsup Grocery Company of Dublin, Ga., and his testimony shows that he delivered the goods and received immediate payment therefor. The goods sold by Alspaugh in Cadwell were in Georgia at the time, and belonged to a Georgia concern. In this transaction there was no interstate commerce involved. The commerce which is protected by the Federal constitution is "the negotiation of sales of goods which are in another State for the purpose of introducing them into the State in which the negotiation is made." See Caldwell v. North Carolina, 187 U. S. 622 (23 Sup. Ct. 229, 47 L. ed. 336). "The non-resident, in carrying on business with the citizens of this State, will be protected fully and completely in making and consummating contracts of sale, up to and including actual delivery to the purchaser, but we do not believe it was ever contemplated by the commerce clause of the constitution, or by the decisions of the United States Supreme Court construing it, that an agent appointed by a non-resident, not only to make a sale, but to perform some other act, not a necessary part of the sale and having no necessary connection with interstate commerce, would be exempt from the reasonable exercise of the taxing power of the State, operating solely upon the act which is not a necessary part of the contract of sale." Browning v. City of Waycross, 11 Ga. App. 50, 51 (74 S. E. 566).

The principle announced in the following quotation is the same as that under discussion: "The defendant's occupation was offering for sale and selling sewing machines, by going from place to place in the State of Missouri, in a wagon, without a license. There is nothing in the case to show that he offered for sale any machine that he did not have with him at the time. His dealings were neither accompanied nor followed by any transfer of goods, or of any order for their transfer, from one state to another; and were neither interstate commerce in themselves, nor were they in any way directly connected with such commerce. The only business or commerce in which he was engaged was internal and domestic; and, so far as appears, the only goods in which he was dealing had

become part of the mass of property within the State. Both the occupation and the goods therefore were subject to the taxing power, and to the police power, of the State." Emert *v.* Missouri, 156 U. S. 311 (15 Sup. Ct. 370, 39 L. ed. 430).

We think the following principle, announced in the first headnote of the decision in *Duncan* v. *State,* 105 *Ga.* 457 (30 S. E. 755), absolutely settles the instant case: "The interstate commerce clause of the Federal constitution has no application to sales of goods in this State, when it appears that the same had been manufactured in another State, shipped in quantities to an agent of the manufacturer residing in Georgia, by him deposited in a warehouse, and from thence delivered on retail orders obtained by a traveling agent of the manufacturer. Emert *v.* Missouri [supra], and authorities cited." See also *Price* v. *City of Atlanta* 105 *Ga.* 358 (31 S. E. 619).

*Judgment affirmed. Broyles, P. J., and Stephens, J., concur.*