## STATE v. THE CRABTREE COMPANY.[1]

June 23, 1944.

No. 33,819.

*Linderman & Shaeffer,* for appellant.

*R. S. Wiggin,* City Attorney, and *Joseph A. Hadley* and *William H. Eckholdt,* Assistant City Attorneys, for the State.

STREISSGUTH, JUSTICE.

Defendant is a corporation engaged in the business of selling cigarettes at wholesale in Minneapolis. Having sold 57 cartons to a retail dealer in that city, it was charged with and convicted of the offense of selling cigarettes without a license, contrary to a city ordinance.

[1]Reported in 15 N. W. (2d) 98.

The ordinance requires a license of all persons, companies, and corporations who sell cigarettes, without distinction as between retailers, jobbers, wholesalers, and manufacturers. It was enacted, as appears from its title, for the "Good Order of the City, and the Suppression of Vice and Intemperance and the Prevention of Crime." Besides the licensing provisions, there is a section making it an offense to "sell, give to, or in any way furnish any cigarettes, cigarette paper or cigarette wrappers in any form to any person under eighteen years of age, or to any minor pupil in any school, college or university."

Defendant offers as a postulate for a broad attack upon the ordinance that "medical science is generally agreed that cigarettes are not deleterious to humans." In order to test the validity of this statement, let us begin with elements. What does "deleterious" mean? It is defined as "hurtful, morally or physically; injurious, as influence; poisonous; unwholesome." Funk & Wagnalls New Standard Dictionary, 1932.

Without assuming to ourselves any expert knowledge on the subject, we express grave doubt as to the accuracy of the claims made for their product by tobacco companies, who have spent millions in attempting to dissuade the public from the thought that the use of cigarettes is harmful physically. Adolescent boys and girls, who form an important, if not the principal, group of radio listeners, may be thereby persuaded; and, with their impressionable minds and their ever-present desire to imitate their elders, many of them unquestionably do acquire the cigarette habit in early youth, in perfect, though misplaced, confidence that not the slightest harm, either physical or moral, can result. But our credulity is not sufficiently robust to give even a semblance of reality to such claims. In fact, much of the discussion on the subject in commercial radio programs and in newspaper and magazine advertisements is directed to the claims that the product which is presently being sponsored causes *less* throat irritation, or *fewer* coughs, or in general is *less* harmful than the rival brands. It seems fair to infer from these conflicting claims that even the nondeleterious physical

effect of cigarettes generally is at least a debatable question—one upon which our lawmaking bodies, our legislatures and municipal councils, have the final say in determining what the general welfare of the state or municipality requires.

As to the harmful moral effect of cigarettes upon adolescent boys and girls, any student of or authority upon juvenile behavior and many a parent will testify. See, Detroit Retail Druggists' Assn. v. City of Detroit, 267 Mich. 405, 255 N. W. 217. Both boys and girls in their imitative years are attracted by the apparent glamour and sophistication in the use of cigarettes; while young boys turn to cigarettes rather than to a pipe or cigar because they have learned from Tom Sawyer of the "wallop" contained in the latter. As said in Goodrich v. State, 133 Wis. 242, 247, 113 N. W. 388, 390, 14 Ann. Cas. 932, 933:

"* * * probably the consideration which has most tended to condemnatory legislation against cigarettes has been their use by the very young. This objectionable fact has undoubtedly been due mainly to the kind of tobacco which has been a general though not universal characteristic of the paper-wrapped cigarette, originally selected because of adaptability to inhalation, but also serving, by reason of its mildness, to remove the protection which nature placed in the way of acquiring habits of use of the more vigorous tobacco commonly used in cigars. Before the day of the cigarette, mastery of the tobacco habit was obstructed by agonies of nausea usually sufficient to postpone it to a period of at least reasonable maturity."

So far as the contest as to the relative merits and demerits of particular brands of cigarettes remains between tobacco companies, it is not serious; it is merely a business, not a social, problem. But if this court should say "amen" to all that has been claimed for cigarettes by their manufacturers and declare any attempted regulation of their sale to be invalid, the social consequences might be tremendous. No court of any state has yet so said, and we do not propose to be the first. On the contrary, every court that has

passed upon the question has unqualifiedly affirmed the power of a state, or of a municipality under the general welfare clauses of its charter, to prohibit the sale of cigarettes to minors and students, and to regulate and control, by license or otherwise, the sale and use of cigarettes generally.[2]   And, if consideration be given to the fact that during the past decade marijuana cigarettes and perhaps other drugged cigarettes, not only harmful but actually poisonous, have found their way into illicit traffic, the need for regulation and control becomes self-evident.

Our own legislature has prohibited the smoking of cigarettes by any person below the age of 18 years. Minn. St. 1941, § 614.63 (Mason St. 1927, § 3241). By other enactments, it has made it a misdemeanor for minors under 18 and minor students to smoke or use cigarettes, cigars, or tobacco in any form in public places (§§ 617.64, 617.66 [§§ 10144, 10146]) ; or for any person to sell or furnish such minors with the same (§§ 614.62, 617.64, 617.65 [§§ 3240, 10144, 10145]) ; or to harbor or grant to such minors the privilege of frequenting his property for the purpose of indulging in the use of tobacco (§ 617.67 [§ 10147]) ; and has expressly given grand juries inquisitorial powers over such misdemeanors (§ 617.68 [§ 10148]). It has prohibited the sale of cigarettes within 1,000 feet of certain

---

[2]See, State v. Nossaman, 107 Kan. 715, 193 P. 347, 20 A. L. R. 921, and note, for cases prior to 1920. Leading cases are:  Austin v. Tennessee, 179 U. S. 343, 21 S. Ct. 132, 45 L. ed. 224, affirming 101 Tenn. 563, 48 S. W. 305, 50 L. R. A. 478, 70 A. S. R. 703; Gundling v. City of Chicago, 177 U. S. 183, 20 S. Ct. 633, 44 L. ed. 725, affirming 176 Ill. 340, 52 N. E. 44, 48 L. R. A. 230; Cook v. Marshall County, 196 U. S. 261, 25 S. Ct. 233, 49 L. ed. 471, affirming 119 Iowa 384, 93 N. W. 372, 104 A. S. R. 283. More recent cases are:  Ford Hopkins Co. v. Iowa City, 216 Iowa 1286, 248 N. W. 668; Alspaugh v. Town of Cadwell, 24 Ga. App. 16, 99 S. E. 707; Little v. Smith, 124 Kan. 237, 257 P. 959, 57 A. L. R. 100; Commonwealth v. McCray, 250 Ky. 182, 61 S. W. (2d) 1043; Ex parte Asotsky, 319 Mo. 810, 5 S. W. (2d) 22, 62 A. L. R. 95; Ploch v. City of St. Louis, 345 Mo. 1069, 138 S. W. (2d) 1020; Edmonds v. City of St. Louis, 348 Mo. 1063, 156 S. W. (2d) 619; State v. Packer Corp. 77 Utah 500, 297 P. 1013; Illinois Cigarette Service Co. v. City of Chicago (7 Cir.) 89 F. (2d) 610, 111 A. L. R. 749.

state institutions (§ 617.71 [§ 10151]). Finally, it has prohibited the manufacture, sale, furnishing, and use of adulterated cigarettes containing any substance deleterious to health without distinction as between minors and adults (§§ 614.64, 614.65 [§§ 10456, 10457]).

The police power of the legislature in these respects has never been successfully questioned. Both the state and its municipalities have a wide discretion in resorting to that power for the purpose of preserving public health, safety, and morals, or abating public nuisances. Holden v. Hardy, 169 U. S. 366, 392, 18 S. Ct. 383, 388, 42 L. ed. 780, 791. Cigarettes being a proper field of regulation under the police power, a city or village may operate in that field under the general welfare clause of its charter unless excluded therefrom by express legislative enactment.

No specific legislative sanction is needed to vitalize the general welfare clause of a city charter. No express grant of power to legislate upon any particular subject is necessary. Sverkerson v. City of Minneapolis, 204 Minn. 388, 283 N. W. 555, 120 A. L. R. 944. It is entirely appropriate that each municipality of any considerable size should make its own police regulations for the preservation of the health, safety, and welfare of its own citizens. 37 Am. Jur., Municipal Corporations, §§ 276, 278. And, absent any positive statutory prohibition against its legislating on the sale of cigarettes by wholesalers, a city has ample authority to do so. No such prohibition is found in L. 1941, c. 405, § 3, authorizing cities to "license and regulate the sale at retail of cigarettes," for that statute expressly grants further authority to the city to "make such other provisions for the regulation of the sale of cigarettes within its jurisdiction as are permitted by law."

Premising its final argument upon the assumption that the Minneapolis ordinance was intended only as a regulation of the sale of cigarettes to minors, defendant urges that "the end sought is fully attained by regulating the retailer," and that to extract license fees from both retailer and wholesaler is unnecessary and unreasonable. Sight is lost of the fact that some dispensers of cigarettes at retail are difficult to control, and that the licensing of wholesalers

may be directed to the distribution of cigarettes to irresponsible retailers, who, with or without the license, bootleg the forbidden weed to minors. Granted that wholesalers and retailers might properly be placed in separate classes for the purpose of licensing (33 Am. Jur., Licenses, § 34, p. 359; Note, 62 A. L. R. 109; Knisely v. Cotterel, 196 Pa. 614, 46 A. 861, 50 L. R. A. 86; Cook v. Marshall County, 196 U. S. 261, 25 S. Ct. 233, 49 L. ed. 471), there is no compelling reason for distinguishing between sales of cigarettes at retail and sales at wholesale. It is only a question of the precise point in the chain of distribution at which the control shall be exercised. Regulation of the retailer will control the direct distribution to children and others to whom the use of cigarettes is taboo; regulation of the wholesaler, the indirect distribution to them, through pool halls, roadhouses, "honky-tonks," and other irresponsible establishments where juveniles are wont to congregate.

Regardless of what point control is aimed at, the sale of cigarettes is a proper target for municipal regulation. Municipalities may differ among themselves as to the necessity and scope of such regulations, but so long as the regulations are adopted in good faith, with an eye single to the public welfare, courts will not interfere. State v. Packer Corp. 77 Utah 500, 297 P. 1013; Austin v. Tennessee, 179 U. S. 343, 348, 21 S. Ct. 132, 134, 45 L. ed. 224, 228. As was said by Mr. Justice Stone in Standard Oil Co. v. City of Marysville, 279 U. S. 582, 584, 49 S. Ct. 430, 73 L. ed. 856, 859:

"We need not labor the point, long settled, that where legislative action is within the scope of the police power, fairly debatable questions as to its reasonableness, wisdom and propriety are not for the determination of courts, but for that of the legislative body on which rests the duty and responsibility of decision."

We therefore hold the ordinance under attack valid and applicable to retailer and wholesaler alike.

Affirmed.