DETROIT RETAIL DRUGGISTS' ASS'N *v.* CITY OF DETROIT.

1. LICENSES—POLICE REGULATIONS—FEES.

   License fees imposed as a condition to issuance of license plainly intended as police regulation will be upheld if revenue derived therefrom is not disproportionate to cost of issuance and regulation of business licensed.

2. SAME—FEES—PRESUMPTION OF REASONABLENESS.

   Fee charged for issuance of license under police power will be presumed reasonable unless contrary appears upon ordinance, by-law, or law itself or is established by proper evidence.

3. SAME—FEES—TEST OF REASONABLENESS.

   Reasonableness of fee for license issued under police power is governed by expense and amount of regulation of business licensed and if amount of fee is out of proportion to expense involved, it will be declared a tax.

4. CONSTITUTIONAL LAW—POLICE POWER—VENDING OF CIGARETTES—MINORS.

   Vending of cigarettes is a proper subject of police regulation, particularly because of injury to health and otherwise of minors smoking tobacco and in relation to juvenile delinquency.

5. MUNICIPAL CORPORATIONS—LICENSE FEES—CIGARETTE VENDORS.

   Action of city council in raising annual license fee for cigarette vendors from $1 to $5 is assumed to have been taken in furtherance of their duty to enforce the law in view of State law prohibiting sale of cigarettes to minors and evidence that large sums could properly be spent combating lawlessness among minors.

6. SAME—DISCRETION OF CITY COUNCIL—TEST OF REASONABLENESS.

   City ordinance increasing annual license fee for cigarette vendors from $1 to $5 *held,* not an abuse of discretion where cost of issuance and formal inspection has been $1.38 per license, other incidental costs are estimated at $1 per license and evidence is presented that much more may properly and ought to be done in future in enforcement of law governing sale of cigarettes.

Appeal from Wayne; Campbell (Allan), J. Submitted April 20, 1934. (Docket No. 157, Calendar No. 37,750.) Decided June 4, 1934.

Bill by Detroit Retail Druggists' Association, a nonprofit corporation, and others against City of Detroit, a municipal corporation, to enjoin the enforcement of a city ordinance licensing cigarette vendors. Decree for plaintiffs. Defendant appeals. Reversed, and bill dismissed.

*Raymond H. Berry (Berry & Stevens* and *Ralph W. Barbier,* of counsel), for plaintiffs.

*Raymond J. Kelly, Nathaniel H. Goldstick* and *Vance G. Ingalls,* for defendant.

Fead, J. Defendant city appeals from a decree declaring invalid and permanently restraining enforcement of an ordinance of the city of Detroit, imposing a license fee of $5 per year on vendors of cigarettes, on the ground the amount is excessive and unreasonable.

Since 1915 the fee had been $1 per year. In 1932 the common council raised the license fees on several occupations and set the cigarette vendors' charge at $10. The mayor vetoed the ordinance and the fee was placed at $5. It is claimed the increase of license fees was for the purpose of raising revenue for the city and not for regulation of the occupations.

Licenses, while controlled by the mayor, are in fact handled by a division of the police department. In each precinct is a patrolman who has special charge of them. He makes investigations for issuance and revocation and such further inspections as appear advisable. With a reasonable degree of ac-

curacy it was shown that the cost of issuing licenses and the ordinary formal inspection is $1.38. The cost does not cover such incidental expenses as court costs of enforcement, expenses of the mayor's department, the cost of policing juvenile delinquency, and the like. It was estimated or, more correctly, guessed that such expense would be $1 per license. In 1932 the surplus of the license bureau over cost of issuance was about $26,000. The increased cigarette fee would raise the surplus some $30,000 to $40,000. It is said that the various increases together produce a surplus of nearly $250,000.

Policemen and policewomen testified that there was substantially no effort made to enforce the law governing the sale of cigarettes; that there was practically no inspection of the places of business; that smoking is a cause or phase of juvenile delinquency and that large sums could properly be spent to combat lawlessness among minors.

. The principles governing licensing occupations are well settled. They were succinctly stated by Mr. Justice POTTER in *Fletcher Oil Co.* v. *City of Bay City*, 247 Mich. 572:

"The imposition of license fees as a condition to issuing a license, when plainly intended as police regulations, will be upheld if the revenue derived therefrom is not disproportionate to the cost of issuing the license and the regulation of the business licensed. Anything in excess of an amount which will defray such necessary expenses cannot be imposed under the police power alone, because it then becomes a revenue measure. What is a reasonable license fee must depend upon the sound discretion of the legislative body imposing it, having reference to the circumstances and necessities of the case. It will be presumed the amount of the fee is reasonable unless it contrarily appears upon the face of the or-

dinance, by-law, or law itself, or is established by proper evidence. In determining whether a fee required for a license is excessive or not, the expense or amount of regulatory provisions and the nature of the subject of regulation should be considered, and if the amount is wholly out of proportion to the expense involved, it will be declared a tax. If revenue is incidentally derived which is not so disproportionate as to make the fee charged unreasonable, there can be no objection."

See, also, *People* v. *Kupusinac*, 261 Mich. 398.

It is recognized that the vending of cigarettes is a proper subject of police regulation, particularly because of injury to health and otherwise of minors from smoking tobacco. It is idle to deny that the question of juvenile delinquency is involved. The sale of tobacco to minors has long been prohibited by State law. The cigarette is the form of smoking most attractive to youth. As most men remember, the cigarette carries to the boy a keen sense of wicked delight when he obtains it, takes him into concealed places with others in an atmosphere permeated with a prideful feeling of law-breaking, and induces a lawless bravado which often culminates in a raid on a neighboring orchard or garden in the country or a fruit stand or store in the city. No one has suggested that it is salutary or conducive to good conduct of girls. The tendency of juvenile smoking is toward sneaky behavior and juvenile delinquency. That is why most parents combat it, either by direct prohibition or by an attempt to combat the greater evil of surreptitious smoking by means of the lesser evil of inducing open and frank use of tobacco in the home.

It is self-evident that if the city authorities have a decent desire to regulate the cigarette business for the protection of youth, they can spend much more

money legitimately than they have done in the past. In passing upon the conduct of a public body it must be assumed that the authorities have acted in furtherance of a desire to do their plain duty to enforce the law. If ordinances of this sort are to be tested upon the basis of what has been done, there can be no advance in the performance of public obligations. If it is tested, as it should be, upon the basis of what may properly be done and what ought to be done, we cannot say there is such a disproportion between the fee imposed and the expense of regulation as would justify holding the discretionary action of the council invalid.

Decree reversed and bill dismissed, without costs.

NELSON SHARPE, C. J., and POTTER, NORTH, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.