# Syllabus

Chief Justice:
Bridget M. McCormack

Chief Justice Pro Tem:
David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

MICHIGAN ASSOCIATION OF HOME BUILDERS v CITY OF TROY

Docket No. 156737. Argued on application for leave to appeal March 7, 2019. Decided July 11, 2019.

The Michigan Association of Home Builders, Associated Builders and Contractors of Michigan, and the Michigan Plumbing and Mechanical Contractors Association filed a three-count complaint in the Oakland Circuit Court seeking declaratory and injunctive relief against the city of Troy, alleging that the building inspection fees generated under defendant's contract with SAFEbuilt Michigan, Inc., under which SAFEbuilt assumed the duties of defendant's building department, produced significant monthly surpluses that defendant used to augment its general fund in violation of the Construction Code Act, MCL 125.1501 *et seq*., and the Headlee Amendment, Const 1963, art 9, §§ 25 through 34. Specifically, plaintiffs alleged that this practice violated MCL 125.1522(1), which requires that fees be reasonable, intended to bear a reasonable relation to the cost of building department services, and used only for the operation of the building department. Following discovery, plaintiffs moved for summary disposition under MCR 2.116(C)(10), and defendant sought summary disposition under MCR 2.116(I)(2). After a hearing, the trial court, Shalina D. Kumar, J., granted summary disposition to defendant, ruling that the court did not have jurisdiction over plaintiffs' lawsuit because plaintiffs had failed to exhaust their administrative remedies under MCL 125.1509b. The Court of Appeals, JANSEN, P.J., and OWENS and SHAPIRO, JJ., agreed and affirmed in an unpublished per curiam opinion issued March 13, 2014 (Docket No. 313688). Plaintiffs were granted leave to appeal in the Supreme Court, which reversed the lower courts' decisions, held that the administrative procedure referred to in MCL 125.1509b did not apply, and remanded the case to the trial court for further proceedings. 497 Mich 281 (2015). On remand, after additional discovery, the parties filed cross-motions for summary disposition. The court granted defendant's motion, ruling that defendant's practice of depositing the fees it had retained into the general fund did not violate MCL 125.1522(1) because that money repaid loans from the general fund that were used to operate the building department in times of shortfalls. Plaintiffs appealed. The Court of Appeals, O'BRIEN, P.J., and MURRAY, J. (JANSEN, J., dissenting), agreed with the trial court and affirmed its decision in an unpublished per curiam opinion issued September 28, 2017 (Docket No. 331708). Plaintiffs again applied for leave to appeal in the Supreme Court, which ordered and heard oral argument on whether to grant the application or take other action. 502 Mich 878 (2019).

In a unanimous opinion by Justice ZAHRA, in lieu of granting leave to appeal, the Supreme Court *held*:

The use of the revenue generated by defendant's building inspection fees to pay the building department's budgetary shortfalls in previous years violated MCL 125.1522(1) because it was not reasonably related to the cost of acts and services provided by the building department. However, because defendant presented evidence to justify the retention of a portion of these fees, the case was remanded for further proceedings. On remand, plaintiffs may attempt to establish representational standing to maintain a claim under the Headlee Amendment.

1. MCL 125.1522(1) places three restrictions on a municipality's authority to establish fees under the Construction Code Act: the amount of the fee must be reasonable, the amount of the fee must be reasonably related to the cost of providing the service, and the fees collected must only be used for the operation of the enforcing agency or the construction board of appeals, or both, and may not be used for any other purpose. Defendant's use of building inspection fees for the purpose of satisfying a historical deficit violated the second restriction in MCL 125.1522(1) because neither "overhead" nor the "cost . . . to the governmental subdivision" encompasses paying a general fund for a historical shortfall. Unlike MCL 125.1522(2), which concerns the creation of the state construction code fund, MCL 125.1522(1) does not expressly provide for a surplus. Further, there was evidence that defendant did not intend that the fees charged bear a reasonable relation to the cost of the services performed. While the law does not demand a precise correlation between costs and fees required, it does require a reasonable relation. Because defendant did present some evidence of direct and indirect costs incurred by the building department that may have been related to the services performed and overhead, the case was remanded to establish the amount of these costs.

2. MCL 125.1522(1) does not explicitly provide for a private cause of action that would allow plaintiffs to seek monetary damages, and there was no basis on which to find an implied cause of action. The cases plaintiffs cited to the contrary all predated the enactment of the governmental tort liability act, MCL 691.1401 *et seq*., which abrogated the common-law claims on which plaintiffs relied and provided cities immunity from tort liability absent express legislative authorization. However, plaintiffs may maintain a cause of action for injunctive relief pursuant to MCR 3.310 or declaratory relief pursuant to MCR 2.605.

3. Generally, a taxpayer has no standing to challenge the expenditure of public funds if the threatened injury to him or her is no different than that to taxpayers generally. However, standing to pursue violations of the Headlee Amendment is given to all taxpayers in the state by Const 1963, art 9, § 32. Although plaintiffs alleged that their members included residents of and taxpayers in defendant city of Troy, plaintiffs failed to provide any record evidence that plaintiffs or their members paid taxes in the city of Troy and actually paid the fees at issue. Therefore, it could not be determined whether plaintiffs established standing.

Reversed and remanded for further proceedings.

©2019 State of Michigan

# OPINION

Chief Justice:
Bridget M. McCormack

Chief Justice Pro Tem:
David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

FILED July 11, 2019

S T A T E   O F   M I C H I G A N

SUPREME COURT

MICHIGAN ASSOCIATION OF HOME
BUILDERS, ASSOCIATED BUILDERS
AND CONTRACTORS OF MICHIGAN,
and MICHIGAN PLUMBING AND
MECHANICAL CONTRACTOR
ASSOCIATION,

       Plaintiffs-Appellants,

v                                   No. 156737

CITY OF TROY,

       Defendant-Appellee.

BEFORE THE ENTIRE BENCH

ZAHRA, J.

The question presented in this case is whether the building inspection fees assessed

by defendant, the city of Troy (the City), are "intended to bear a reasonable relation to the

cost"[1] of acts and services provided by the City's Building Inspection Department (Building Department) under the Construction Code Act (CCA).[2] We hold that the City's use of the revenue generated by those fees to pay the Building Department's budgetary shortfalls in previous years violates MCL 125.1522(1). While fees imposed to satisfy the alleged historical deficit may arguably be for "the operation of the enforcing agency or the construction board of appeals," this does not mean that such fees "bear a reasonable relation" to the costs of acts and services provided by the Building Department. Here, plaintiffs have presented sufficient evidence to conclude that the City established fees that were not intended to "bear a reasonable relation" to the costs of acts and services necessary to justify the City's retention of 25% of all the fees collected. We further conclude that there is no express or implied monetary remedy for a violation of MCL 125.1522(1). Nonetheless, we conclude that plaintiffs may seek declaratory and injunctive relief to redress present and future violations of MCL 125.1522(1). Because the City has presented evidence to justify the retention of a portion of these fees, we remand to the trial court for further proceedings.

Lastly, we conclude that there is no record evidence establishing that plaintiffs are "taxpayer[s]" with standing to file suit pursuant to the Headlee Amendment.[3] On remand, the trial court shall allow plaintiffs' members an opportunity to establish representational

---

[1] MCL 125.1522(1).

[2] MCL 125.1501 *et seq*.

[3] The Headlee Amendment added §§ 25 through 34 to Article 9 of the Michigan Constitution. The provision relating to standing is found in § 32.

2

standing on plaintiffs' behalf. Accordingly, we reverse the Court of Appeals judgment and remand to the trial court for further proceedings not inconsistent with this opinion.

## I. BASIC FACTS AND PROCEEDINGS

Since 2003, the Building Department allegedly had been operating with a yearly deficit which, in the aggregate, amounted to $6,707,216 in 2011. In July 2010, the City privatized the Building Department by entering into a contract with SAFEbuilt Michigan, Inc. (SAFEbuilt), under which SAFEbuilt assumed the duties of the Building Department. Under the terms of the contract, SAFEbuilt would receive 80% of the building inspection fees, and the City would retain the remaining 20% of the fees. The contract also provided that if the fees totaled more than $1,000,000 for any fiscal year, then SAFEbuilt would only receive 75% of the fees and the City would retain 25% of the fees. The City has retained over $250,000 in fees every year since 2011, indicating that the fees totaled more than $1,000,000 in each of those years. While the Building Department operated at a $47,354 deficit in 2011, the City retained $269,483 in fees in 2012, $488,922 in 2013, and $325,512 in 2014. Over these three years, the City retained $1,083,917 in fees and, by 2016, the City had retained $2,326,061.

On December 15, 2010, plaintiffs, Michigan Association of Home Builders, Associated Builders and Contractors of Michigan, and Michigan Plumbing and Mechanical Contractors Association, filed a three-count verified complaint against the City. Plaintiffs alleged violations of the CCA and the Headlee Amendment,[4] and they sought declaratory and injunctive relief. They claimed that the building inspection fees generated under the

---

[4] Const 1963, art 9, § 31.

City's contract with SAFEbuilt produced "significant monthly surpluses" that the City used to augment its general fund. Plaintiffs alleged that this practice violates MCL 125.1522(1), which requires that fees (1) be reasonable, (2) "be intended to bear a reasonable relation to the cost" of Building Department services, and (3) be used only for operation of the Building Department. They also claimed that the City's fee practice is unconstitutional under the Headlee Amendment, which prohibits taxation by local units of government without voter approval.

Following discovery, plaintiffs moved for summary disposition under MCR 2.116(C)(10), and the City sought summary disposition under MCR 2.116(I)(2). After conducting a hearing, the trial court granted summary disposition to the City, ruling that the court did not have jurisdiction over plaintiffs' lawsuit because plaintiffs had failed to exhaust their administrative remedies under MCL 125.1509b before filing their complaint. The Court of Appeals agreed and affirmed.[5] Plaintiffs applied for leave to appeal in this Court, and we ordered and heard oral argument on whether to grant plaintiffs' application or take other preemptory action.[6] In a memorandum opinion, we reversed the lower courts' decisions and held that the administrative procedure referred to in MCL 125.1509b did not apply.[7] We remanded to the trial court for further proceedings.[8]

---

[5] *Mich Ass'n of Home Builders v City of Troy*, unpublished per curiam opinion of the Court of Appeals, issued March 13, 2014 (Docket No. 313688).

[6] *Mich Ass'n of Home Builders v City of Troy*, 497 Mich 862 (2014).

[7] *Mich Ass'n of Home Builders v City of Troy*, 497 Mich 281, 288; 871 NW2d 1 (2015).

[8] *Id*. at 283.

On remand, the trial court allowed additional discovery. The parties then filed cross-motions for summary disposition. The court granted the City's motion. The court determined as a matter of law that the City's practice of depositing the fees it had retained into the general fund does not violate MCL 125.1522(1) because that money repaid loans from the general fund that were used to operate the Building Department in times of shortfalls.

Plaintiffs appealed. The Court of Appeals agreed with the trial court and affirmed its decision in an unpublished opinion.[9]

Plaintiffs again applied for leave to appeal in this Court. We directed the Clerk of this Court to schedule oral argument on whether to grant the application or take other action, and we ordered the parties to file supplemental briefing on the following issues:

> (1) whether the creation of a fee surplus generated by an enforcing agency under the Construction Code Act (CCA), MCL 125.1501 *et seq*., and the use of that surplus to pay for shortfalls in previous years by transfer of the surplus into the city's general fund, violates the constraints of § 22 that fees be reasonable, be intended to bear a reasonable relation to the cost of acts and services provided by the enforcing agency, and be used only for the operation of the enforcing agency or the construction board of appeals, or both; (2) if so, whether appellants have a private cause of action against a governmental subdivision for enforcement of the CCA, MCL 125.1508b(1); (3) whether appellants are "taxpayers" that have standing to file suit pursuant to the Headlee Amendment, Const 1963, art 9, § 32; and (4) if so, whether the challenged fees violate the Headlee Amendment, Const 1963, art 9, § 31.[10]

---

[9] *Mich Ass'n of Home Builders v City of Troy (After Remand)*, unpublished per curiam opinion of the Court of Appeals, issued September 28, 2017 (Docket No. 331708).

[10] *Mich Ass'n of Home Builders v City of Troy*, 502 Mich 878 (2019).

## II. STANDARD OF REVIEW AND APPLICABLE RULES OF STATUTORY INTERPRETATION AND CONSTITUTIONAL INTERPRETATION

This Court reviews de novo a trial court's decision on a motion for summary disposition.[11] The parties brought their respective summary disposition motions under MCR 2.116(C)(10), which tests the factual sufficiency of a claim.[12] "In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion."[13] If, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, . . . the moving party is entitled to judgment or partial judgment as a matter of law,"[14] and the trial court must grant the motion without delay.[15] Whether a party has standing is a question of law that is reviewed de novo.[16]

This Court also reviews de novo questions of statutory interpretation.[17] "The role of this Court in interpreting statutory language is to 'ascertain the legislative intent that

---

[11] *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

[12] *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999).

[13] *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).

[14] MCR 2.116(C)(10).

[15] MCR 2.116(I)(1).

[16] *Lee v Macomb Co Bd of Comm'rs*, 464 Mich 726, 734; 629 NW2d 900 (2001), overruled on other grounds by *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349 (2010).

[17] *Badeen v PAR, Inc*, 496 Mich 75, 81; 853 NW2d 303 (2014).

may reasonably be inferred from the words in a statute.' "[18]  "The focus of our analysis must be the statute's express language, which offers the most reliable evidence of the Legislature's intent."[19]  " '[W]here the statutory language is clear and unambiguous, the statute must be applied as written.' "[20]  " '[A] court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself.' "[21]  Neither will this Court "rewrite the plain statutory language and substitute our own policy decisions for those already made by the Legislature."[22]

"A primary rule in interpreting a constitutional provision such as the Headlee Amendment is the rule of 'common understanding[.]' "[23]  As this Court has explained:

> A constitution is made for the people and by the people. *The interpretation that should be given it is that which reasonable minds, the great mass of people themselves, would give it.* "For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, *but rather that they have accepted them in the sense most obvious to the common understanding*, and ratified the instrument in the belief that that was the sense designed to be conveyed."[24]

---

[18] *Hannay v Dep't of Transp*, 497 Mich 45, 57; 860 NW2d 67 (2014) (citation omitted).

[19] *Badeen*, 496 Mich at 81.

[20] *McQueer v Perfect Fence Co*, 502 Mich 276, 286; 917 NW2d 584 (2018) (citation omitted).

[21] *Id*., quoting *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).

[22] *DiBenedetto v West Shore Hosp*, 461 Mich 394, 405; 605 NW2d 300 (2000).

[23] *Bolt v City of Lansing*, 459 Mich 152, 160; 587 NW2d 264 (1998).

[24] *Traverse City Sch Dist v Attorney General*, 384 Mich 390, 405; 185 NW2d 9 (1971), quoting Cooley, Constitutional Limitations (4th ed), p 81 (quotation marks and citation omitted).

## III.  ANALYSIS

### A.  THE CITY'S FEES VIOLATE MCL 125.1522(1)

MCL 125.1522(1) provides:

> The legislative body of a governmental subdivision shall establish reasonable fees to be charged by the governmental subdivision for acts and services performed by the enforcing agency or construction board of appeals under this act, which fees shall be intended to bear a reasonable relation to the cost, including overhead, to the governmental subdivision of the acts and services, including, without limitation, those services and acts as, in case of an enforcing agency, issuance of building permits, examination of plans and specifications, inspection of construction undertaken pursuant to a building permit, and the issuance of certificates of use and occupancy, and, in case of a board of appeals, hearing appeals in accordance with this act.  The enforcing agency shall collect the fees established under this subsection.  The legislative body of a governmental subdivision shall only use fees generated under this section for the operation of the enforcing agency or the construction board of appeals, or both, and shall not use the fees for any other purpose.

In interpreting this provision, the Court of Appeals majority wrote:

[T]he first sentence of MCL 125.1522(1) provides for the establishment of fees "for acts and services performed . . . ."  Our reading of the statutory language confirms that use of the term "performed" can be understood to mean future, current, and past services provided.  We reach this conclusion where there is no restricting or limiting language preceding the word "performed" indicating a temporal constraint, such as "currently performed," "to be performed," or "previously performed."  Moreover, the final sentence of MCL 125.1522(1), indicating "[t]he legislative body . . . shall only use fees generated under this section for the operation of the enforcing agency . . ." likewise fails to suggest a temporal restriction pertaining to the word "operation."  Thus, we agree with [the City] that "the operation" of [its] Building Department can denote a current, past, or future action.  Although the final sentence of MCL 125.1522(1) does restrict the use of "fees generated" to "the operation of the enforcing agency . . . and . . . not . . . for any other purpose[,]" we are not persuaded that [the City]'s action in applying surplus fees to past shortfalls is inconsistent with this language.  Put another way, if the excess or surplus fees are used to cover expenses or costs incurred with the running or "operation" of the building department,

currently or for past shortfalls incurred, [the City's] conduct remains in conformance with MCL 125.1522(1).[25]

The Court of Appeals majority acknowledged that "by indicating that the 'reasonable fees' are 'to bear a reasonable relation to the cost, including overhead, . . . of the acts and services[ ]' to be provided, there exists an implication that the fees should cover the cost of the services received in exchange for the fee being paid."[26] The Court of Appeals explained that "the existence of a surplus does not automatically result in a determination that the fees charged are unreasonable and, therefore, do not satisfy the dictates of MCL 125.1522(1)."[27] The Court of Appeals also acknowledged that "[i]f the fees for a particular service consistently generate revenue exceeding the costs for the service, the reasonableness of the fee for that service would be suspect."[28] The Court of Appeals majority opined, however, that this "has not been demonstrated."[29]

Judge JANSEN dissented, disagreeing with the majority's interpretation of MCL 125.1522(1). In her view:

> The statute does not allow [the City] to charge current payers and permit applicants more than what is reasonable in order to make up for losses it chose to incur by failing to charge previous permit applicants appropriately under the statute. To hold that under MCL 125.1522(1), a city may engage in such creative budgeting would create a poor precedent. Under the majority's interpretation of the statute, a city might permissibly choose to

---

[25] *Mich Ass'n of Home Builders (After Remand)*, unpub op at 4.

[26] *Id.* at 5.

[27] *Id.*

[28] *Id.*

[29] *Id.*

9

create a shortfall in any given year and unfairly charge unreasonable rates in subsequent years, completely defeating the goal of ensuring that each individual fee-payer pays for the acts and services he or she is provided.[30]

The parties agree that MCL 125.1522(1) places three restrictions on a municipality's authority to establish fees under the CCA. One—the amount of the fee "shall" be reasonable. Two—the amount of the fee "shall" be reasonably related to the cost of providing the service. And three—the fees collected "shall" only be used for the operation of the enforcing agency or the construction board of appeals, or both, and "shall" not be used for any other purpose.

We conclude that the City's use of building inspection fees for the purpose of satisfying a historical deficit violates the second restriction in MCL 125.1522(1). MCL 125.1522(1) expressly ties fees to the "cost, including overhead, to the governmental subdivision of the acts and services . . . ." It is the third restriction that requires the fees generated to be used for "the operation of the enforcing agency or the construction board of appeals." We view "the cost . . . to the governmental subdivision" as only a component of "the operation of the enforcing agency or the construction board of appeals."[31] So too is the Building Department's "overhead," which relates to "the general cost of running a business" or more specifically "the general, fixed costs of running a business as rent,

---

[30] *Id*. (JANSEN, J., dissenting) at 3.

[31] Further, the third restriction in MCL 125.1522(1) has nothing to do with the reasonableness of fees charged. Indeed, that restriction refers to "fees generated," which the municipality may only use "for the operation of the enforcing agency or the construction board of appeals, or both . . . ." The third restriction is a limitation on the municipality's use of fees generated under the CCA.

10

lighting, and heating expenses, that cannot be charged to a specific product,"[32] a component of "the operation of the enforcing agency or the construction board of appeals." Neither "overhead" nor the "cost . . . to the governmental subdivision" encompasses paying a general fund for a historical shortfall. While payments made to restore the historical deficit may arguably be for "the operation of the enforcing agency or the construction board of appeals," this does not mean those fees are related to the costs to the governmental subdivision.

Further, this reading is consistent with the notable differences between MCL 125.1522(1) and MCL 125.1522(2). Under the CCA, the director of the Department of Licensing and Regulatory Affairs (the Department) is initially vested with powers to enforce the CCA. Municipal governments, such as the City, may assume responsibility for enforcement of the CAA. MCL 125.1522(2) concerns the creation of the state construction code fund (the Fund) that allows the Department, with oversight by the Construction Code Commission (the Commission) and following a public hearing, to establish fees to be charged for acts and services performed by the Commission.[33] The state treasurer is made custodian of the Fund and "may invest the surplus of the fund in investments as in the state treasurer's judgment are in the best interest of the fund."[34] Earnings from those investments are credited to the Fund.

---

[32] *Random House Webster's College Dictionary* (1997).

[33] MCL 125.1522(2).

[34] *Id*.

11

MCL 125.1522(1) requires that a municipality "establish reasonable fees to be charged by the governmental subdivision for acts and services performed by the enforcing agency or construction board of appeals under this act . . . ." Similarly, MCL 125.1522(2) requires that the Commission "shall establish reasonable fees to be charged by the commission for acts and services performed by the commission . . . ." Further, MCL 125.1522(1) and MCL 125.1522(2) both require that the "fees shall be intended to bear a reasonable relation to the cost, including overhead."

But MCL 125.1522(2) contains a provision that MCL 125.1522(1) does not. MCL 125.1522(2) states that "[t]he state treasurer shall be the custodian of the fund and may invest the surplus of the fund in investments as in the state treasurer's judgment are in the best interest of the fund." MCL 125.1522(1) has no such "surplus" provision, but instead contains an express limitation on the use of funds—"for the operation of the enforcing agency or the construction board of appeals" and not "for any other purpose."[35] In plaintiffs' view, the expression of a permissible "surplus" in MCL 125.1522(2) implies the exclusion of a permissible "surplus" in MCL 125.1522(1).

In stark contrast to plaintiffs' argument, the City maintains that "the fact [that] the legislature included specific duties in [MCL 125.1522(2)] that were not included in [MCL 125.1522(1)] reveals . . . that the legislative intent was to provide local units of government broad discretion in deciding what constitutes 'operation of the enforcing agency' when establishing fees and how any fee surplus may be applied." Again, while payments made to restore the historical deficit may arguably be for "the operation of the enforcing agency

---

[35] MCL 125.1522(1).

12

or the construction board of appeals," this does not mean those payments are related to the costs for building inspection services performed or overhead. Further, the City's discretion under MCL 125.1522(1) is not unfettered; it is subject to a reasonableness component that ensures payments are related to the costs for building inspection services performed or overhead, not the overall operation of the Building Department. Accordingly, we agree with plaintiffs that MCL 125.1522(1) does not envision a "surplus" baked consistently into the fees.[36]

There is evidence that the City did not intend that the fees charged bear a reasonable relation to the cost of the services performed. Under the contract, the City retains at least 20% of the revenue from the building fees but allegedly retains only 8% of that amount to absorb the Building Department's indirect costs.[37] According to Thomas Darling, the City's interim director of financial and administrative services, the City's indirect costs include the salary of and the costs associated with the employment of one city employee, "the building code official." Even assuming the City's indirect costs amount to 8% of its revenue from its building fees, the City fails to account for the remaining 12% of the inspection-fee revenue it retains. More problematic yet is that the contract allows the City to retain an additional 5% of the fees when more than $1 million in fees is collected in a fiscal year. This provision is vexing for two reasons. First, the City has collected $1 million in fees in every year but one following the inception of the contract and has offered

---

[36] As later explained, exactitude is not required and occasional and incidental surplus would not run afoul of MCL 125.1522(1).

[37] As we address in more detail later, according to the City, it uses an 8% estimate, which is derived from a study, for indirect costs.

no explanation of any additional costs to justify the 5% increase. Second, there is simply no explanation as to how this contractual provision can be squared with the statutory requirement that fees be reasonably related to the cost of the service. The increase is attributable only to the amount of fees collected in any given year and is completely unrelated to the cost of the services.

Even the Court of Appeals majority acknowledged that "[i]f the fees for a particular service consistently generate revenue exceeding the costs for the service, the reasonableness of the fee for that service would be suspect."[38] The majority, however, opined that "this has not been demonstrated."[39] We disagree. Rather, we agree with Judge JANSEN that

> [the City] used its building department fees to raise $269,483 in surplus funds in 2012, $488,922 in 2013, and $325,512 in 2014, for a total of $1,083,917 deposited directly into [the City]'s general fund over the course of only three years. This "surplus" is not negligible. Common sense indicates that it is not incidental.[40]

With that said, we also recognize that the City has presented some evidence of direct and indirect costs that may be related to the services performed and overhead.[41] Thomas

---

[38] *Mich Ass'n of Home Builders (After Remand)* (opinion of the Court), unpub op at 5.

[39] *Id*.

[40] *Id*. (JANSEN, J., dissenting) at 2.

[41] We cannot reconcile the City's claim that its retained fees are used to pay the Building Department's historical deficit with the City's claim that its retained fees are used to absorb the direct and indirect costs of the Building Department. These claims are, in part, mutually exclusive as the City can either use the funds to pay its deficit or to pay direct and indirect costs of the Building Department. The only potential for reconciling the two claims is if the City first pays direct and indirect costs of the Building Department and then uses the remaining funds to reduce its deficit. But the City has not taken this position, and thus, we

14

Darling identified in detail the listing of expenses associated with the Building Department. Further, John Lamerato, the City's former assistant manager for finance and administration, testified that the City incurs additional expenses for operation of the Building Department that exceed those attributable to SAFEbuilt that are "offset with the revenue" generated. In the City's answer to the application, it notes that "[t]here are also indirect costs to enforce the CCA, and MCL 125.1522 expressly allows for the inclusion of these costs in the required accounting and reporting." The City acknowledged that it "did not and does not have financial software that can separately record each of these indirect costs of CCA enforcement, and the act of individually tracking each such expenditure on a spreadsheet would require a significant amount of manual inputting." So "the City employed a conservative 8% overhead allocation to use as the indirect cost of enforcement of the CCA, which is a practice that is routinely used in construction contracts." Lamerato explained the City's practice in his deposition as follows:

> Walsh College and graduate students performed the study for the City a number of years ago, and they came up with a—normal, I would say, for cities is around 10 percent for direct and over administrative costs, and they came up with a figure of 8 percent as a number, and that's what we've been using since it was done by an outside firm and outside agency.

We conclude that the City is entirely justified in retaining revenue to cover the direct and indirect costs of the services it provides. MCL 125.1522(1) expressly allows the City to establish fees that cover overhead, i.e., indirect costs. But, because there is conflicting

---

consider these two claims as alternative theories to justify the reasonableness of its fees charged.

15

evidence in regard to the amount of indirect costs incurred by the Building Department, we remand to the trial court for further proceedings.

Lastly, we agree with the City that "the State statute vests discretion with the City Council, and there is no mandate to set fees that exactly match the expenditures, especially since the fee setting process can only be a best estimate of what the future revenue and expenses will be in the coming year." Indeed, "[t]he law does not demand a precise correlation between costs and fees required, but, rather, a reasonable relation."[42] More importantly, MCL 125.1522(1) requires only that the "fees shall be *intended* to bear a reasonable relation to the cost, including overhead." Exactitude is not required. In sum, we agree with plaintiffs that the City cannot establish fees that result in surpluses to pay the historical deficits of its Building Department, but we remand to the trial court for further findings in regard to the amount of direct and indirect costs incurred by the Building Department for the services it has performed.

## B. PRIVATE CAUSE OF ACTION TO REDRESS A VIOLATION OF MCL 125.1522(1)

Having concluded that defendant's use of the fees generated violates MCL 125.1522(1), we next address whether plaintiffs may maintain a statutory cause of action to redress this violation. As explained in Michigan Pleading & Practice:

> Where a statute imposes on any person a specific duty for the protection or benefit of others, but a civil remedy for securing the beneficial right given is not specified, the common law provides a remedy, and if the neglect or refusal to perform the duty results in injury or detriment to another, that person has a cause of action, if the injury or detriment is of the kind that

---

[42] *Merrelli v City of St Clair Shores*, 355 Mich 575, 588; 96 NW2d 144 (1959).

16

the statute was intended to prevent. On the other hand, even though an alleged violation of a statute constitutes a tort, a private cause of action does not exist where the statute provides a comprehensive, exclusive scheme of enforcement of the rights and duties it creates.[43]

Plaintiffs do not possess, nor do they claim to possess, an *express* private cause of action to enforce MCL 125.1522(1), which would allow them to seek monetary damages, because the statute does not explicitly provide for a private cause of action.[44] Plaintiffs

---

[43] Michigan Pleading & Practice (2d ed), § 6.12, pp 452-453.

[44] The City first argues that only the Director may enforce MCL 125.1522(1). The City states that "MCL 125.1508b(1) contains the only provision regarding enforcement of the statute." That provision states, in part, "Except as otherwise provided in this section, the director is responsible for administration and enforcement of this act and the code."

According to the City, "this statutory provision vests only the Director of the [Department of] Licensing and Regulatory Affairs with enforcement powers." But the City fails to consider the remainder of that provision:

> A governmental subdivision may by ordinance assume responsibility for administration and enforcement of this act within its political boundary. A county ordinance adopted pursuant to this act shall be adopted by the county board of commissioners and shall be signed by the chairperson of the county board of commissioners and certified by the county clerk.

Troy Ordinances, Chapter 79, § 8.1, states, in relevant part, as follows:

> Pursuant to the provisions of Section 3(k) of Act 270 of 1909, State of Michigan, as amended, Michigan Complied [sic] Laws 117.3(k) and Section 8a of Act 230 of 1972, State of Michigan, as amended, Michigan Complied [sic] Laws 125.1508a, the State of Michigan Building Code is hereby adopted by reference by the City of Troy for the purpose of regulating the erection, construction, alteration, addition, repair, removal, demolition, use, location, occupancy and maintenance of all buildings and structures, and shall apply to existing or proposed buildings and structures in the City of Troy.

Here, the City expressly assumed responsibility for administration and enforcement of the CCA by enacting an ordinance. Since the City assumed this responsibility, the Director may no longer enforce MCL 125.1522(1). We acknowledge that the CCA does

17

instead argue that a cause of action should be inferred, because MCL 125.1522(1) merely codifies a common-law claim and remedy under Michigan law for unreasonable fees, fees that are not reasonably related to the cost of service, and fees that are not spent for the regulatory purpose claimed. In support, plaintiffs cite *Detroit Retail Druggists' Ass'n v Detroit*,[45] *Fletcher Oil Co v Bay City*,[46] and *Vernor v Secretary of State*.[47] Plaintiffs conclude that because MCL 125.1522(1) does not create "a right or duty not found at common law," a statutory cause of action may be implied. We disagree. Plaintiffs fail to appreciate that cases on which they rely all predate the enactment of the governmental tort liability act (GTLA),[48] which was passed in 1964 and abrogated those common-law claims.

Further, because the City is a "public employer," which expressly includes cities under MCL 15.601(a), the City enjoys immunity from tort liability under the GTLA.[49] That is, "without 'express legislative authorization,' a cause of action cannot be created 'in

---

provide that the Director "may conduct a performance evaluation of an enforcing agency to assure that the administration and enforcement of this act and the code is being done pursuant to either section 8a or 8b." MCL 125.1509b. But the City's establishment of fees under the CCA is not "done pursuant to either section 8a or 8b" but, rather, MCL 125.1522. While the Director may review the building inspection services that the City performs, there is no statutory basis for the Department to review the City's fees for reasonableness. Thus, the City's argument that only the Director is empowered to enforce MCL 125.1522 lacks merit.

[45] *Detroit Retail Druggists' Ass'n v Detroit*, 267 Mich 405; 255 NW 217 (1934).

[46] *Fletcher Oil Co v Bay City*, 247 Mich 572; 266 NW 248 (1929).

[47] *Vernor v Secretary of State*, 179 Mich 157; 146 NW 338 (1914).

[48] MCL 691.1401 *et seq.*

[49] *Lash v Traverse City*, 479 Mich 180, 194-195; 735 NW2d 628 (2007).

18

contravention of the broad scope of governmental immunity . . . .' "[50] And here, not only is there no express legislative authorization, but there is simply no indication that the Legislature intended a monetary remedy for a violation of MCL 125.1522(1). Thus, we conclude that plaintiffs cannot maintain an express or implied tort action under MCL 125.1522(1).

Even though a statutory private cause of action for monetary damages does not exist, a plaintiff may nonetheless maintain a cause of action for declaratory and equitable relief. In *Lash v Traverse City*, this Court rejected the plaintiff's claim that a private cause of action for monetary damages was the only mechanism by which the relevant statute could be enforced, noting that plaintiff could enforce the statute by seeking injunctive relief pursuant to MCR 3.310 or declaratory relief pursuant to MCR 2.605(A)(1).[51] Here, as in *Lash*, plaintiffs could enforce the statute by seeking injunctive or declaratory relief. A preliminary injunction may be granted under MCR 3.310(A) if a plaintiff "can make a particularized showing of irreparable harm that will occur before the merits of the claim are considered."[52] Further, an "actual controversy" exists for the purposes of a declaratory judgment where a plaintiff pleads and proves facts demonstrating an adverse interest necessitating a judgment to preserve the plaintiff's legal rights. In this case, plaintiffs'

---

[50] *Id*. at 194 (citation omitted).

[51] *Lash*, 479 Mich at 196.

[52] *Lash*, 479 Mich at 196. MCR 2.605(A)(1) provides the following remedy: "In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted."

claim is that the City's building inspection fees, which affect plaintiffs' economic interests,[53] were assessed in violation of MCL 125.1522(1). Such a claim would constitute an "actual controversy" for the purposes of an action for a declaratory judgment. Therefore, although plaintiffs do not possess a private cause of action for monetary damages, they may maintain their cause of action for declaratory and equitable relief.

## C. HEADLEE AMENDMENT

Traditionally, a private citizen has no standing to vindicate a public wrong or enforce a public right if he or she has not been injured in a manner that is different from the public at large.[54] Therefore, under general standing principles, a taxpayer has no standing to challenge the expenditure of public funds if the threatened injury to him or her is no different than that to taxpayers generally.[55] Standing to pursue violations of the Headlee Amendment is given to all taxpayers in the state. Const 1963, art 9, § 32 provides:

> Any taxpayer of the state shall have standing to bring suit in the Michigan State Court of Appeals to enforce the provisions of Sections 25 through 31, inclusive, of this Article and, if the suit is sustained, shall receive

---

[53] As later discussed, beyond counsel's representation at oral argument that plaintiffs sometimes pay homeowners' building inspection fees, there is no record evidence that plaintiffs themselves (or their members for that matter) are taxpayers in the City and have themselves actually paid the fees. However, the City nonetheless requires that its fees be paid, and if those fees are excessive, we believe that plaintiffs' economic interests would be adversely affected. In other words, a genuine argument could be made that excessive building inspection fees are prohibitive to those providing construction-related goods and services.

[54] *Inglis v Pub Sch Employees Retirement Bd*, 374 Mich 10, 12; 131 NW2d 54 (1964).

[55] *Waterford Sch Dist v State Bd of Ed*, 98 Mich App 658, 662; 296 NW2d 328 (1980).

20

from the applicable unit of government his costs incurred in maintaining such suit.

As stated by this Court:

> [I]n enacting [the Headlee] amendment the voters "were . . . concerned with ensuring control of local funding and taxation by the people most affected, the local taxpayers. The Headlee Amendment is the voters' effort to link funding, taxes, and control." Specifically relevant to the case at bar, we held that § 32 is an explicit grant of standing to taxpayers to bring suits under the Headlee Amendment.[56]

According to plaintiffs' complaint, plaintiffs are nonprofit organizations incorporated in the city of Lansing and "represent and count among their members numerous home builders, contractors, subcontractors, construction companies, construction laborers, suppliers, building tradespeople, and supporting businesses such as attorneys, accountants, architects, banks and insurance professionals, that conduct business in, obtain permits from, seek building plan review in, request inspections by, and seek building and construction-related authorizations (such as plan approval, interim and final inspections and occupancy permits) from Defendant and its Building Department." Plaintiffs allege that their "members also include taxpayers in this State, and residents of and taxpayers residing and doing business in the City of Troy."

In plaintiffs' previous appeal in this Court, the issue of standing was broached at oral argument.[57] Although some assurance was given at that time that plaintiffs actually

---

[56] *Macomb Co Taxpayers Ass'n v L'Anse Creuse Pub Sch*, 455 Mich 1, 7; 564 NW2d 457 (1997) (citation omitted).

[57] At the March 11, 2015 oral argument, the following was stated:

> *Chief Justice YOUNG*: Could I ask a simple question?

21

*Mr. McClelland*: Certainly. I do best with those.

*Chief Justice YOUNG*: I'll try and ask a simple one. Do your—I've not had a lot of building events in my life, I've had a couple—as I—as I recall, although the contractors pull the permits and pay the fees initially, I paid them as the owner, is that how this works?

*Mr. McClelland*: That's the way it should work.

*Chief Justice YOUNG*: So in what sense are your clients taxpayers in this case?

*Mr. McClelland*: We paid the fees your honor and sometimes we get paid and sometimes we don't. I don't know that that's an issue that's currently before the Court, but—

*Chief Justice YOUNG*: Well, it's a standing question.

*Mr. McClelland*: Certainly. Certainly.

*Chief Justice YOUNG*: And it just occurs to me that people who are the pass through may not be the person to have standing.

*Mr. McClelland*: Well, I will tell the Court that's not a simple question.

*Chief Justice YOUNG*: Okay, I thought it might be.

*Mr. McClelland*: But I think as a matter of law they paid the fees and the fact that they do or do not receive reimbursement wouldn't eliminate their standing since they're required to pay the fees.

*Chief Justice YOUNG*: Okay.

*Justice ZAHRA*: When you pull the permit, is the permit in the name of the builder or is the permit in the name of the . . . homeowner?

*Mr. McClelland*: Typically it's the name of the builder.

*Justice ZAHRA*: Okay.

*Mr. McClelland*: There are—

22

paid the fees charged by the City, a very real question remained as to whether plaintiffs were nevertheless "taxpayers." As previously mentioned, this Court reversed the Court of Appeals and remanded for further proceedings. The trial court allowed the parties to engage in further discovery. After plaintiffs appealed in this Court, we then expressly asked the parties to address the issue. The parties submitted briefs, amici filed briefs, and oral argument was held on the issue. Yet plaintiffs still failed to provide any record evidence that plaintiffs (or their members for that matter) are taxpayers in the city of Troy and have actually paid the fees beyond the allegations in the complaint and counsel's representation at oral argument that plaintiffs sometimes pay homeowners' building inspection fees. Therefore, we cannot at this time conclude that plaintiffs have established standing.[58]

## IV. CONCLUSION

We reverse the lower courts' decisions and hold that the use of the revenue generated by the City's building inspection fees to pay the Building Department's

---

*Justice ZAHRA*: That's a simple answer I think.

*Mr. McClelland*: Yeah. There are a few owners out there that want to take that responsibility among themselves, but it's not general practice your honor.

[58] Because we cannot reach the conclusion on this record that plaintiffs are taxpayers, we do not address the unripe constitutional question whether the challenged fees violate the Headlee Amendment, Const 1963, art 9, § 31. Nonetheless, some of plaintiffs' individual members may be able to establish that they are indeed taxpayers. Thus, we remand to allow plaintiffs to establish representational standing to maintain a claim under the Headlee Amendment.

budgetary shortfalls in previous years violates MCL 125.1522(1) because it is not reasonably related to the cost of acts and services provided by the Building Department. However, because the City has presented evidence to justify the retention of a portion of these fees, we remand to the trial court for further proceedings. We also remand for further proceedings to allow plaintiffs to establish representational standing to maintain a claim under the Headlee Amendment.

Brian K. Zahra
Bridget M. McCormack
Stephen J. Markman
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

24